# CHARLESTON.

### TRAVIS *v.* PEABODY INSURANCE COMPANY.

Submitted June 12, 1886,—Decided October 23, 1886.

| | |
|---|---|
| 28 | 583 |
| 29 | 538 |
| 31 | 857 |
| 28 | 583 |
| 36 | 426 |
| 28 | 583 |
| 37 | 283 |
| 28 | 583 |
| 40 | 518 |
| 40 | 746 |
| 28 | 583 |
| 55 | 353 |
| 28 | 583 |
| e57 | 573 |
| 28 | 583 |
| f61 | 681 |

1. A declaration in *assumpsit* on a policy of insurance, not intended to be drawn after the form prescribed by ch. 66 of the Acts of 1877, is nevertheless sufficient, if it in substance and effect sets forth the cause of action by averments equivalent to those prescribed by that statute, although it may be insufficient as a common law declaration.   (p. 593.)

2. The plaintiff during the trial of the cause, and before verdict found, may at the discretion of the court be permitted to amend his declaration, in order that a material variance between its allegations and the proofs may be avoided, upon the terms, if the defendant so request, that the jury shall be discharged and the cause continued with leave to the defendant to amend his pleas, or plead anew to the declaration so amended.   (p. 595.)

3. The circuit courts of this State, in the exercise of their general common law jurisdiction, in the absence of any statute prohibiting them from doing so, and independently of any statute authorizing them to do so, may in their discretion permit the pleadings to be amended at any time before verdict found, whenever justice will be promoted thereby, and the same can be done without injury to the opposite party, but in every such case, if the opposite party requests it, the jury should be discharged, and the cause continued with leave to the opposite party to amend his pleadings or to plead anew to the pleadings, so amended.   (p. 595.)

4. In an action upon a policy of insurance a plea, that such policy was made and issued to a different person than the person named therein although of the same name, is equivalent to the general issue, and if objected to, ought to be rejected, or if demurred to, the demurrer should be sustained.   (p. 595.)

5. Pleas, which in effect deny, that the plaintiff ever had any cause of action against the defendant, as in the declaration is alleged, are equivalent to the general issue and, if objected to, should be rejected.   (p. 595.)

6. In an action of *assumpsit* upon a policy of insurance of $1,500.00 against loss by fire of a certain stock of store goods the defendant filed a plea alleging in substance, that at and before the making of the policy the insured falsely represented to the defendant's agent, who issued the policy, that the stock of store goods

about to be insured was worth $2,000.00, which was false and then by the insured known to be false, and that the "goods" were not worth that sum ; and that the insured then and there agreed, that during the continuance of the policy, he would keep in said store a stock of goods of the average value of $2,000.00, and that he did not keep up his average stock to the value of $2,000.00, but permitted the same to be run down until at the time they were destroyed, they did not exceed in value $300.00. HELD :

Such plea presents no good ground of defence, and having been objected to it ought to have been rejected, and having been demurred to the demurrer ought to have been sustained.  (p. 597.)

7. Where a defendant moves the court to set aside the verdict and grant him a new trial, on the ground that the same is contrary to the evidence, the bill of exceptions certifies the evidence introduced on the trial and not the *facts proved*, the motion will be overruled, unless after rejecting all the parol evidence on the part of the defendant, which is in conflict with that of the plaintiff, the verdict is clearly wrong.  (p. 799.)

8. On the trial of an action upon a policy of a fire-insurance-company an instruction, which in effect tells the jury, that, if the company's agent employed in issuing such policy, without any misrepresentation or suppression of the truth by word or act on the part of the person desiring to be insured or on the part of his agent employed in negotiating such insurance—*fails or neglects* to ascertain the identity of the person desiring such insurance, and *believes* that the name of the insured is in fact the name of his agent, and that the agent of the *insured* and the *insured* are one and the same person, such company is not bound to the insured by such policy—is erroneous, and was properly refused.  (p. 598.)

9. Where the declaration sufficiently sets forth a good cause of action, and there is no objection to the form or sufficiency of the verdict, a motion in arrest of judgment will be overruled.  (p. 599.)

*James Morrow, Jr.*, for plaintiff in error.

*U. N. Arnett* and *J. A. Haggerty* for defendants in error.

WOODS, JUDGE:

Jonathan E. Travis, on the 13th day of May, 1882, instituted in the circuit court of Marion county his action of *assumpsit* against the Peabody Insurance Company to recover the sum of $1,500.00, for which he held a policy of insur-

ance issued to him by said company, upon a stock of store goods owned by him, in a certain store-house, which during the continuance of the policy was destroyed by fire.

The declaration contained but a single count, which substantially averred, that the defendant on the 8th of November, 1881, by its instrument, in writing, called a policy of insurance, signed by Alonzo Loring, its president, attested by J. F. Paul, its secretary, and countersigned by J. E. Sands, its agent, in consideration of $26.25, paid by the plaintiff, undertook to make good to him all loss or damage, not exceeding in amount the sum insured, being the sum of $1,500.00, nor the interest of the plaintiff in the property thereby insured, and in said policy specified, the said plaintiff's stock of merchandise, consisting of dry goods (and other kinds of property particularly mentioned) all contained in a certain store-house (the description and location of which is particularly described in the policy and in the declaration) from the 8th day of November, 1881, at 12 o'clock (noon) to the 8th day of November, 1882, at 12 o'clock noon, the amount of loss or damage to be estimated at the actual cash value of the property at the time of such loss, and to be paid at the office of the defendant in the city of Wheeling, W. Va., sixty days after due notice and proofs of the same shall have been made by the plaintiff and received at said office, in accordance with the terms and provisions of said policy, all of which, it was averred, would more fully appear by reference to said policy of insurance (*which is herewith filed*).

The declaration further averred that after the making of said policy, and while it was in full force, and before the 8th day of November, 1882, the said property so insured (particularly discribing it), then being in said store-house, (particularly describing it) was on the——day of December, 1881, totally consumed and destroyed by fire, and that afterwards the plaintiff made due notice and proof of said loss and damage of which the defendant had due notice, at its office in Wheeling, W. Va., more than sixty days before the commencement of the suit, the said loss and damage being estimated according to the terms and provisions of said policy, and that by notice thereof the defendant became liable to pay the plaintiff the said sum of $1,500.00 being the amount

of the damage sustained by the plaintiff by the reason of the loss and destruction of his said property in manner aforesaid, so consumed or destroyed by fire as aforesaid.

The declaration further averred that he did not institute his said action until many days after the expiration of sixty days from the time the plaintiff gave to the defendant at its office in Wheeling W. Va. due notice and proof of the destruction and loss of his said property by fire as aforesaid as required in said policy of insurance, and in conclusion averred that the defendant being so liable, afterwards on the——day of——1882, undertook and promised to pay to the plaintiff the said sum of money mentioned in said policy whenever requested, &c., but although often requested has not paid, &c., to the damage of the plaintiff $2,000.00.

To this declaration the defendant demurred, which demurrer was overruled. The defendant then pleaded the general issue, and tendered and offered to file special pleas Nos. 1, 2 and 3 to which plaintiff objected, and thereupon the court rejected plea Nos. 1, but allowed pleas No. 2 and 3 to be filed, to which the plaintiff then demurred which demurrer was overruled, and the plaintiff replied generally thereto, and to the plea of *non assumpsit*.

On the 17th July, 1883, the issues on these pleas were submitted to a jury, when the plaintiff offered to introduce in evidence, said policy of insurance to which the defendant objected, and the court sustained its objection and excluded the policy on account of an alleged variance between it and the one described in the declaration.

No other evidence was offered, and the plaintiff asked, and obtained leave to amend and did amend his declaration by inserting therein the words, " which is herewith filed," and upon the motion of the defendant, and because of said amendment the jury was discharged and the case continued at the plaintiff's costs. To the ruling of the court allowing said amendment the defendant excepted.

Afterwards the defendant filed two other pleas Nos. 5 and 6, to which the plaintiff demurred, but his demurrer was overruled. The defendant also filed another plea, No. 7, in the form prescribed by sec. 64 of ch. 125 of the Code of 1868, as amended by ch. 17 of the Acts of 1882, accompanied by

a statement in writing, giving notice of the grounds of defence why the action could not be maintained.

"1. Because the plaintiff did not make proof of his said loss, nor give the defendant notice thereof according to the requirements of said policy :

"2. The said policy of insurance was procured by the fraud and misrepresentation of the said plaintiff in this, to-wit, the plaintiff represented to defendant that the said goods, &c., insured were of the value of $2,000.00 at the time said policy was made and issued, which plaintiff well knew to be false ; said goods were not at said time worth $2,000.00 ; and in this said plaintiff procured one Joseph Travis, plaintiff's father, to personate him, the said plaintiff, and induce the defendant to believe, and defendant did believe at the time of entering into said contract and issuing said policy and thence until after the said loss occurred, that the said Joseph Travis was in fact J. E. Travis, and defendant in fact issued said policy to said Joseph Travis by the name of J. E. Travis and not to the plaintiff, as plaintiff well knew.

"3. The said policy was issued to Joseph Travis by the name and description of J. E. Travis, which defendant at the time of issuing said policy believed to be the true abbreviated name of said Joseph Travis, as the said plaintiff then and there well knew. Said Joseph Travis is another and different person from the plaintiff, and defendant never issued said policy of insurance to the plaintiff, and did not know that plaintiff was another and different person from the said Joseph Travis until after said loss had occurred.

"4. The said insured property was not, at the time said policy was issued nor at any time afterwards nor at the time of its destruction by fire, the property of said plaintiff, but the same belonged to him jointly with other persons.

"5. The said property destroyed by fire was owned, as to part of it, by the plaintiff jointly with other persons, and as to the other part thereof, the plaintiff had no interest therein, but the same was owned solely and exclusively by another person or by other persons.

"6. The said destruction by fire was the act of the plaintiff and his agent and servants and joint owners of said property."

The foregoing statement was verified by the affidavit of J. E. Sands the defendant's agent.

To the plea the plaintiff filed a special replication, verified by the affidavit of his counsel as required by the statute, alleging matters in confession and avoidance of the first ground of defence set forth in the defendant's statement, accompanying his plea No. 7.

To this replication the defendant replied generally and issue was thereon joined.

At the December term 1884, the cause was again submitted to a jury, who after the evidence and argument of counsel had been heard on the 13th December, 1884, returned a verdict in favor of the plaintiff for nine hundred dollars damages.

Thereupon the defendant moved the court to arrest the judgment, and also to set aside the verdict and grant it a new trial on the ground that the same was contrary to the law and the evidence, and because of the matters set forth in the affidavit of Joseph E. Sands, of which motion the court took time to consider.

At a circuit court held on the 2nd of April 1885, the defendant's motions in arrest of judgment and to set aside the verdict, were overruled and judgment was rendered in favor of the plaintiff for the sum of $900.00 the damages assessed by the jury, with interest and costs.

To this ruling of the court the defendant excepted and filed its bill of exceptions, in which all the evidence introduced on the trial was certified. During the progress of the trial the defendant moved the court to give to the jury the following instructions:

INSTRUCTION NO. 1.

" If the jury believe from the evidence that the plaintiff is the son of Joseph Travis, otherwise called and known by the name of Doctor Travis, and that at the time of the making and issuing of said policy of insurance, the plaintiff was a young unmarried man residing with his father and mother, and that the defendant had no other knowledge of either the plaintiff or the said Joseph Travis except what was possessed by Joseph E. Sands, defendant's agent at Fairmont, and if the jury further believe from the evidence that at the time

of making said contract of insurance and issuing said policy, the said agent, Sands, knew said Joseph Travis as Doctor Travis, and had known him by that name and description for several years, but had never known J. E. Travis, the plaintiff, nor known that there was such a person, although said agent may have seen said J. E. Trevis and known him to be a son of said Doctor Travis, and if the jury also believe from the evidence that said policy of insurance was applied for and obtained from said agent, Sands, by the said Joseph Travis, and that agent never had any conversation with said plaintiff in reference to said insurance or policy, and never saw said plaintiff nor heard of him at any time in relation to said insurance or policy until after the insured property had been destroyed by fire on the 9th day of December, 1881, and if the jury further believe from the evidence that the time of making and issuing said policy of insurance, said agent inserted the name of J. E. Travis therein at the instance of the said Doctor Joseph Travis, the said agent believing that the said name J. E. Travis was the name of the said Doctor Joseph Travis, and that he, the said agent, was then and there making and issuing said policy to the said Doctor Joseph Travis, then the court instructs the jury that the said policy is not a contract with the said plaintiff, and the verdict of the jury should be for the defendant."

INSTRUCTION NO. 2.

" If the jury believe from the evidence that the property insured was owned by the plaintiff jointly with other persons and not by the plaintiff alone, they should find for the defendant."

INSTRUCTION NO. 3.

" If the jury believe from the evidence that before and at the time of the making and issuing of the policy of insurance sued on, the plaintiff, or his agent acting for him in that behalf, represented and stated to defendant's agent who issued said policy and with whom said contract of insurance was wholly made, that the goods and property about to be insured were worth $2,000.00, and if the jury further believe from the evidence that the said agent of the said defendant relied upon said statements and representations as to the value of said insured property and issued said policy of in-

surance relying upon and confiding in said representations and statements, and if the jury should further find from the evidence that said representations and statements were false and were known to said J. E. Travis to be false, and that said insured property was worth materially less than $2,-000.00, then the court instructs the jury that such false representations and statements avoid the policy, and the jury should find for the defendant."

INSTRUCTION NO. 4.

"If the jury believe from the evidence that the defendant's agent made and issued the policy of insurance sued on to Joseph Travis, the father of the plaintiff, the said agent then and there believing the said Joseph Travis to be J. E. Travis, and that said agent did not know said J. E. Travis at the time of issuing said policy of insurance, then there was no contract with the plaintiff, and he can not recover in this action."

INSTRUCTION NO. 5.

"If the jury believe from the evidence that the agent of the defendant made and issued the policy of insurance sued on to Joseph Travis believing him to be J. E. Travis, and that said Joseph Travis then and there knew said agent believed him to be J. E. Travis, then there was no contract with J. E. Travis, and he can not maintain this action."

The court gave to the jury the 2nd and 5th, but refused to give the 4th instruction; it also refused to give the 1st in the form proposed, but modified the same by inserting after the words "Doctor Joseph Travis," where that name last occurrs in said instruction these words, "and the said Doctor Joseph Travis then knew, or believed that the said agent supposed him to be J. E. Travis, and the owner of the store," and gave to the jury the instruction so modified.

The court also refused to give the 3d instruction in the form proposed, but modified the same, by inserting after the figures $2,000.00 near the conclusion of the instruction these words, "and that this fact was known to the said J. E. Travis to be false" and gave to the jury the 3d instruction so modified.

To the ruling of the court in refusing to give said instructions to the jury as asked for, and modifying instructions one

and three and giving the same as modified to the jury, the defendant excepted and filed its bill of exceptions.

From this judgment the defendant has obtained a writ of error and *supersedeas.*

The plaintiff in error insists that the court erred

1st. In overruling the demurrer to the declaration, because it contained no averment of property in the insured.

2nd. In permitting the plaintiff to amend his declaration after the trial at December term, 1883, had been commenced.

3d. In refusing to give instruction No. 1 as moved by the defendant.

4th. In refusing to give its instructions No. 3 and No. 4.

5th. In overruling its motions in arrest of judgment and for a new trial.

The first question for consideration is the sufficiency of the declaration. It is evident that the pleader intended it to be a common law declaration, and did not intend to adopt the form prescribed by chapter 66 of the Acts of 1877, and the defendant in his demurrer so regarded it. A careful examination of the authorities on this subject leads us to the conclusion that in a policy of insurance against loss by fire the insured must possess an insurable interest in the subject-matter insured at the time the policy is executed, and at the time the loss occurred, and this insurable interest must be alleged in his declaration. *Quarrier* v. *Peabody Insurance Co.,* 10 W. Va. 507 ; *Fowler* v. *The New York Indemnity Insurance Co.,* 23 Barb. 143; 26 N. Y. 433 ; *Freeman* v. *Fulton Fire Insurance Co.,* 38 Barb. 258 ; *Ruse* v. *Mutual Benefit Life Insurance Co.,* 23 N. Y. 516 ; *Howard* v. *The Abarry Insurance Co.,* 3 Denio 301; *Granger* v. *Howard Insurance Co.,* 5 Wend. 202 ; *Laine* v. *Maine Mutual Fire Insurance Co.,* 12 Maine 44 ; *Shepherd* v. *Peabody Insurance Co.,* 21 W. Va. 368 ; *Lucas* v. *Insurance Co.,* 23 W. Va. 258.

It is unnecessary to attempt to define the precise nature of such an insurable interest; it is sufficient in the present case to say, it may be either the absolute ownership or any less interest or in some cases the simple possession of the subject-matter insured as trustee or bailee or a right to apply the same to the satisfaction of some legal obligation rest

ing upon such bailee or fiduciary as in *Lucas* v. *Insurance Co.*, and *Shepherd* v. *Peabody Insurance Co.*, *supra*.

The precise manner in which, and the degree of particularity, with which this insurable interest must be set forth in a common law declaration, does not very clearly appear either in the adjudicated cases, or in approved precedents.

In the declaration in this case before it was amended, the interest of the plaintiff to say the least was imperfectly set-forth, and rather by way of recital than by direct averment. It recites that the defendant, by its policy insured the "plaintiff's stock of merchandise," consisting of dry goods, &c., which is the only allegation, setting forth the plaintiffs interest at the time the defendant assumed this risk. After averring the destruction of the insured property, the only allegation pretending to aver the ownership of this insurable interest, at the time the property was destroyed, is that the plaintiff had made due notice and proof of said loss and damage to the defendant more than sixty days before suit brought, and that "by virtue whereof the defendant became liable to pay the plaintiff the sum of $1,500.00, being the amount of the damage sustained by him by reason of the loss and destruction of *his said property* in manner aforesaid."

Such an averment of an insurable interest was held to be insufficient by this Court in the case of *Quarrier* v. *Peabody Ins. Co.*, and *Fowler* v. *N. Y. Indemnity Ins. Co.*, and *Laine* v. *Maine Mutual Fire Ins. Co.*, *supra*.

But from the view we have taken of the question presented in this record, we deem it unneessary to determine whether the declaration before its amendment was, or was not, sufficient as a common law declaration.

When the declaration was amended by making the policy a part of it, it became in substance and effect a good declaration upon the policy, under the provision of chapter 66 of the Acts of 1877, which has since been introduced into ch. 125 of the Code of 1878 as amended by chap. 71 of the Acts of 1882. By the introduction of the policy into the declaration by said amendment, it clearly appeared, that the plaintiff had an insurable interest in said property, and the policy on its face was sufficient *prima facie* evidence of the fact, that the insured had an insurable interest in the prop-

erty, and the burden of overcoming this *prima facie* evidence rests upon the defendant.   *Shepherd* v. *Insurance Company*, *supra*

By section 61 of ch. 125 of the Code as amended, the declation upon this policy of insurance, would have been sufficient if it had in effect averred, "that the defendant, by virtue of the policy of insurance, herewith filed, owed $1,500.00 to the plaintiff for loss in respect to the "plaintiff's stock of store-goods," insured by said policy, caused by fire on or about the —— day of December, 1881, in his store-house situated on White Day creek, about five miles from the Smithtown and Grafton road in Marion county, W. Va.

All other allegations ordinarily used in common law declarations on policies of insurance other than life policies, are no longer necessary, and if the declaration under consideration, whether intended to be in the common law form or in the form prescribed by the statute,—in effect contains the allegations prescribed by the statute, it will be sufficient.

Comparing the declaration in this case, as amended, with the form prescribed by the statute, it will be found to contain in effect every allegation required.

The declaration as amended not having been demurred to it would have been unnecessary to consider it, but for the plaintiffs demurrers to the defendant's pleas, which required us to examine the declaration also, as such demurrer goes back to the first pleading of the demurrant.   As amended the declaration was sufficient for the plaintiff to maintain his action.

It is earnestly insisted by the counsel for the plaintiff in error that the court erred in permitting the declaration to be amended after a jury was sworn to try the case, because the amendment was in regard to a matter of substance, material to the cause.

By sec. 8 of ch. 131 of the Code, such an amendment was expressly authorized.   It provides, "If at the trial of any action, there appear to be a variance between the evidence and allegations, or recitals the court may if in its opinion, substantial justice will be promoted thereby, allow the pleadings to be amended, and if it be made to appear that a continuance of the cause is thereby rendered necessary, such

continuance shall be granted at the costs of the party making the amendment."

While this statute authorized this amendment the courts of Virginia before the formation of this State had frequently exercised this authority as incident to courts of common law wherever the justice of the case required it, and the amendment could be made without injury to the opposite party.

In *Tabb* v. *Gregory*, 4 Call 225, the Court of Appeals held, that an amendment to the declaration may be allowed during the trial of the issue ; but if the defendant requests it, the jury should be discharged, the defendant permitted to amend his plea, or plead anew, and the cause continued. In that case the amendment allowed, was held by the Court of Appeals to be unnecessary and therefore immaterial, but deeming it important that the practice in such cases should be settled, it took time to consider, and afterwards announced its opinion that the amendment was allowable on principle.

Lyons, Judge, delivering the opinion of the court, said "that the rigor of the common law has been gradually departed from, until it has become the settled doctrine, that amendments, at the discretion of the court may be allowed at any time before final judgement, provided they produce no injury to the opposite party. Even after the verdict is returned if there be anything by which it can be done, or the justice of the case requires it, amendments will be allowed."

"So that to promote justice on one hand, and prevent injury on the other, seems to be all that is requisite; for if these can be effected the amendment will be allowed at any time before final judgment."

The case of *Anderson* v. *Dudley* ; 5 Call 529, was an action of debt, brought upon a judgment recovered in that court for £144,17.2¼ and costs, but declared for £144,7.2¼ and costs The defendant pleaded "*No such record.*" Upon the trial of the issue on this plea, the plaintiff was allowed to amend his declaration, by inserting the correct sum, to which the defendant excepted. The question was carried to the Court of Appeals, which held that there was no error in permitting the amendment to be made.

In the Court of The King's Bench in *Doubleday*, v—2 Chitty R 27, it was held that if on issue on *nul tiel record*, there

is a variance, the court will permit an amendment on payment of costs; and in *Storer* v. *Gordon*, 2 Chitty R 27, it was held that after a trial and verdict for the plaintiff, the defendant was allowed to amend his plea, and have a new trial on payment of costs.

These authorities sufficiently show that the circuit courts of this State in the exercise of their general common law jurisdiction, in the absence of any statute prohibiting them from doing so, and independently of any statute authorizing them to do so, may in their discretion permit the pleadings to be amended at any time before verdict found, wherever justice will be promoted thereby without injury to the opposite party; but in every such case if the opposite party requests it the jury should be discharged, the opposite party allowed to amend his pleadings or to plead anew to the pleadings so amended, and the cause continued.

The amendment complained of in the case under consideration was made upon the trial, before verdict found, and the cause on motion of the defendant because of the amendment, was continued at the plaintiff's costs.

There was therefore no error in the ruling of the court in allowing the defendant to amend his declaration, although it was in regard to a matter material to the success of his cause. The defendant's plea of *non assumpsit* put in issue every material allegation of the declaration, and the burden of proving that the contract in the policy mentioned in the declaration, was made by the defendant with the plaintiff, that the property insured was the property of the plaintiff at the time the same was insured, and at the time the same was destroyed and also the amount and value of the same at that time, rested upon the plaintiff, and without this proof he could not recover.

The defendant's first special plea was properly rejected as it was equivalent to the general issue, and as the defendant's special pleas No. 2, No. 5 and No. 6 were in effect, the same as the general issue, with the facts necessary to support the same superadded, the plaintiffs demurrer thereto ought to have been sustained.

The defendant's third special plea attempts to avoid the contract in the policy, on the ground that the plaintiff procured

the same to be made by fraud. The grounds of this fraud are alleged to be that before and at the time making said contract and issuing said policy, the plaintiff falsely and fraudulently represented to the defendant that his stock of goods, &c., mentioned in the policy were of the value of $2,000.00, and that he would keep in said store a stock of such merchandise of the average value of $2,000.00 during the continuance of the insurance; and the defendant relying solely upon said representations of the plaintiff and believing the same to be true, entered into the contract and delivered the policy and then averred that these representations were false and fraudulent, and known by the plaintiff to be false, and were made to deceive and defraud the defendant.

This plea further averred that the said "stock of goods" were not at any time worth $2,000.00; and that the plaintiff did not keep in said store a stock of merchandise of the average value of $2,000.00. On the contrary the value of the entire stock in said store, or kept by the plaintiff was not of greater value than $1,000.00 and that the average value of the stock kept in the store after making the policy did not reach $1,000.00—and at the time of the loss—did not exceed $300.00.

This plea does not allege that the plaintiff either in said policy or in any writing therein referred to or made part thereof, made any such representations or promises as are set forth in said plea. And if any such were made as to the value of said goods during the negotiations resulting in said policy of insurance, and they were not mentioned therein, or in some writing therein referred to or made part thereof, no evidence in regard thereto, tending to contradict, alter or modify the contract in said policy, would be admissible, on the well established and familiar principle of evidence, that the contract having been reduced to writing and being free from all ambiguity, it could not be contradicted, modified or altered by parol evidence; and therefore the fact alleged that during such negotiations such representations as to the value of "stock of goods" were made, could not be said to be such a fraud as to render the policy void.

The second allegation of the plea is, that the plaintiff promised to keep up his average stock of goods to the

amount of $2,000.00 during the continuance of the risk.

Admitting this allegation of the plea to be true, as stated, we are unable to perceive how the failure to perform a stipulation in a contract, can be transformed into a fraud in procuring the contract to be made; nor are we able to comprehend how the defendant could be injured by the plaintiff failing to keep on hand in his said store-house during the continuance of the policy, a stock of goods less than the sum of $1,500.00, the amount for which the goods were insured, even though at the time of the loss they did not exceed the sum of $300.00.

It would rather seem to us that whenever, and as often as the stock of goods mentioned in the policy were reduced in value below the amount of the insurance thereon, the defendant's risk would be proportionably diminished, and if at any time during the continuance of the policy the whole stock has been sold, the defendant's risk would have been totally suspended until the stock was replaced by additional purchases.

So far from the defendant being injured by the failure of the plaintiff to keep up his stock of goods to the average value of $2,000.00 during the continuance of the policy, and by permitting it to run down to less than $300.00 at the time of the loss, the plaintiff was benefitted by reducing the defendant's risk from $1,500.00 to $300.00. This plea presented no defence to the plaintiff's action, and his demurrer thereto should have been sustained.

From the view we have taken of this case, the errors committed by the circuit court in overruling the plaintiff's demurrer to the defendant's pleas Nos. 2, 3, 5 and 6 become immaterial, as the verdict notwithstanding the presence of the pleas was in favor of the plaintiff.

The defendant's plea No. 7 is in the form prescribed by sec. 64 of ch. 125 of the Code as amended by the Acts of 1882, and consists of the simple denial of its " liability to the plaintiff" as in the declaration is alleged.

The second specification of the grounds of defence accompanying this plea is in substance and effect the same as plea No. 3, which as we have already seen presents no grounds of defence to the action.

The third, fourth, fifth and sixth specifications, accompanying plea No. 7, are unwarranted by the statute, and present no grounds of defence, but what are admissible upon the trial of the issues upon the last named plea, and the plea of *non assumpsit.* Did the court err in refusing to give to the jury the instructions asked for by the defendant, in the form in which they were proposed, or in modifying the first and third instruction, and giving the same, as modified to the jury?

The substance of this instruction divested of unnecessary verbiage is, that " if Dr. Joseph Travis, then well known to the defendant's agent, Sands, procured him to execute said policy to the plaintiff with whom said agent never had any acquaintance, nor conversation in reference to the policy, until after the insured property had been destroyed by fire; and if the agent, Sands, at the instance of Dr. Joseph Travis inserted in the policy the name of J. E. Travis, then believing that this was the name of Dr. Joseph Travis, and that he was then and there making and issuing said policy to Dr. Joseph Travis, then in that case the policy is not a contract with the plaintiff.

It in effect declares that if the defendant's agent, without any misrepresentation or suppression of the truth by word or act on the part of the person desiring to be insured, or of his agent employed in negotiating such insurance fails or neglects to ascertain the identity of such person, and believes that the name of the insured is in fact the name of his agent, and that the person insured, and his agent are one and the same person, the defendant may, because of such neglect or mistake of its own agent, absolve itself from the obligation of its contract.

This position is untenable because in such case the obligation of the contract would cease to be mutual, and would become entirely dependent upon the pleasure of one of the contracting parties. Such a doctrine would destroy all confidence in the obligation of any contract.

But if the insured or his agent at the time of the making of said policy knew or believed that the agent of defendant supposed that Dr. Joseph Travis was in fact the person whose goods were being insured, and neglected and failed to

correct his mistake, and thus misled him; as to the person whose goods were actually insured, then such policy would not be a contract with the plaintiff.

The defendant's first instruction as proposed by him, did not, and the same as modified by the court and given to the jury did correctly propound the law, and therefore the circuit court did not err in refusing to give the same to the jury as propounded, nor in giving the same to the jury as modified.

We are further of opinion, that the defendant's third instruction, as modified and given to the jury, was substantially the same before as well as after its modification, and the same was properly given to the jury, and that the defendant was not in any manner injured by giving the same to the jury as modified by the court.

The defendant's fourth instruction was in substance the same as the first, before the same was modified, and was therefore properly rejected.

As we have already shown that the declaration, as amended, sufficiently set forth a good cause of action, and there being no objection to the form or substance of the verdict, the defendant's motion in arrest of judgment was properly overruled.

It only remains for us to consider whether the circuit court erred in overruling the defendant's motion to set aside the verdict and award it a new trial.

Two grounds are alleged on which this motion rests; first that the verdict is contrary to the law and the evidence. From what has already been said, we are of opinion that the verdict is not contrary to the law.

The bill of exceptions certifies all the evidence which was introduced before the jury on the trial, and does not attempt to certify the facts proved.

In such case the rule is well settled, that where the evidence and not the facts, is certified in the bill of exceptions the Appellate Court will not reverse the judgment, unless after rejecting all the conflicting parol evidence of the exceptor and giving full faith and credit to that of the adverse party the decision of the trial-court still appears to be wrong. To justify the court in granting a new trial the evidence should be plainly insufficient to support the verdict. *Grayson's Case,*

6 Gratt. 712; *State* v. *Flannagan*, 26 W. Va. 116; *Smith* v. *Townsend*, 21 W. Va. 486; *Black* v. *Thomas*, W. Va. 709; *State* v. *Thompson*, W. Va. 741; *Carrington* v. *Bennett*, 1 Leigh 310; *Ewing* v. *Ewing*, 2 Leigh 337.

The only documentary evidence which was before the jury, was the policy of insurance, and a letter written by the defendant's secretary, dated January 11, 1882, informing the plaintiff that the defendant declined to acknowledge any liability upon the policy for distruction of the goods thereby insured.

About this written evidence there was no dispute, nor was there any conflict between the policy and the said letter.

Applying to the evidence certified in this case the rule already announced, there remains abundant evidence tending to support the verdict of the jury. Many witnesses were examined as to the fact that the property insured was destroyed by fire as alleged in the declaration, the time when and the circumstances attending and surrounding its destruction, and of the amount and value of the goods in the plaintiff's storehouse at the time it was destroyed and that the plaintiff at the time the policy issued and at the time the loss took place was the owner of the goods insured, and that when destroyed these goods were worth as much as found by the jury.

Upon an examination of all the evidence we are of opinion that it fully warranted the verdict of the jury.

But we are asked to set this verdict aside on the grounds of newly discovered evidence as set forth in the affidavit of said Joseph E. Sands, who therein deposed that since the rendition of that verdict he has discovered new and additional evidence of great importance to the defendant, which was not known by it nor had ever come to the knowledge of *affiant*, its agent as aforesaid, until after the trial; that if it had been known that it could be had, a different result would have been reached on the trial.

The affidavit then sets out this newly discovered evidence, and it is precisely of the same character as was the testimony of at least a dozen witnesses, who were examined on the trial, merely tending to show the value of the goods in the plaintiff's store shortly before the loss occurred, the whole being merely cumulative, and no sufficient reason is given why

this evidence was not produced at the trial, nor is it stated that their supposed materiality was unknown to the defendant nor its counsel, who so ably conducted its defence in the circuit court.

The facts stated in the affidavit are clearly insufficient to warrant the Court in disturbing the verdict.

We are of opinion that the defendant's motion to set aside the verdict and award it a new trial was properly overruled.

The judgment of the circuit court of Marion county is affirmed with costs and damages according to law.

AFFIRMED.