# CHARLESTON.

## HARVEY v. PARKERSBURG INSURANCE CO.

Submitted June 18, 1892.--Decided December 10, 1892.

1. ABATEMENT—PLEADING.

The rules of strict pleading still apply on demurrer to pleas in abatement, so that material provisions and exceptions in the statute must be averred. (p. 280.)

2. INSURANCE COMPANY—PROCESS.

Chapter 123, Code W. Va., prescribes in what counties of the state suits may be brought, and section 2 reads as follows: "An action may be brought in a county wherein the cause of action or any part thereof arose, although none of the defendants may reside therein." Section 2, c. 124, Code, provides that process from any court, whether original, mesne, or final, may be directed to the sheriff of any county, except that process against a defendant to answer in any action brought under the second section of chapter 123 shall not be directed to an officer of any other county than that wherein the action is brought, but it excepts from such exception an insurance company. (p. 279.)

3. CONSTRUCTION OF STATUTE—CAUSE OF ACTION.

"The cause of action" generally means the breach of duty by defendant complained of, but under section 2, c. 123, it may consist of one or more essential facts, which plaintiff must show to make out his case, and these may be severable. (p. 281.)

4. INSURANCE COMPANY—PAYMENT.

The debtor, unless it be otherwise provided, must, in order to make payment, seek the creditors; and, as against an insurance company sued in the county where the creditor resides, the cause of action, within the meaning of the statute, arises in such county. (p. 281.)

5. INSURANCE COMPANY—POLICY—DECLARATION—PLEADING.

 Where in the declaration on a policy of insurance the name of
the plaintiff is different from the name of the person to whom the
policy sued on appears to have issued, but the variance does not
appear on the face of the declaration, such variance can not be
reached by demurrer to the declaration.   (p. 282.)

6. INSURANCE COMPANY—POLICY—DECLARATION—PLEADING.

 When such policy is offered in evidence, and it appears that the
person named in the declaration and the person named in the
policy are one and the same person, and the mistake in the policy
is due to the fault of the defendant, it should not be rejected on
his motion.   (p. 282.)

7. CONTINUANCE—PRACTICE.

 Under section 66, c. 125, Code, the court may during the trial
permit plaintiff to file the special statement of any matter in
waiver, estoppel, or otherwise in confession and avoidance, as
provided for by section 65, c. 125, Code, as justice may seem to re-
quire ; but this will not give defendant a continuance as matter of
right, but it is within the sound discretion of the trial-court.
(p. 282.)

8. INSURANCE COMPANY—POLICY—EVIDENCE.

 Where a policy of fire-insurance is issued without any written
application on the part of the assured so far as the facts appear,
the assured in offering in evidence the policy, is not required to
read with it, as part thereof, a written application produced by the
insurer, without proof that it was signed by the assured or the
agent of the assured.   (p. 283.)

9. INSURANCE COMPANY—POLICY.

 When a clause in a policy refers to an application relating to
warranties, misrepresentations, or concealments, and assumes to
make such paper a part of the policy, and no such paper is shown,
the clause which refers to it, and attempts to prescribe its place
and effect as a part of the contract, and to determine the conse-
quences of misstatement, must be regarded as inapplicable to the
facts of the case, and therefore nugatory.   (p. 284.)

10. INSURANCE COMPANY—POLICY—ESTOPPEL.

 Where an insurance policy provides that the books of account
of the assured shall be securely locked in an iron safe in his store,
during the hours that said store is closed, and with the consent of
the agent of the insurance company and the knowledge of the
company who do not object, the books are kept at night in the mer-
chant's dwelling-house, the company is estopped from setting up
such failure to observe such condition as working a forfeiture of
all claims under the policy.   (p. 285.)

*Merrick & Smith* attorney for plaintiffs in error:

I.—*Cause of action arose in Wood county.   Breach of duty*

*cause of action.*—1 Rob. (New) Pra. 358; 3 Am. & Eng. Ency. L. 46 (n. 1); 5 B. & C. 259; 10 How. Prac. 1; 15 N. Y. 505; 70 N. C. 157.

II.—*Material amendment of pleadings during trial entitles opposing party to discharge of jury and continuance.*—28 W. Va. 583, 595.

III.—*On motion to exclude evidence case should not be re-opened, unless such cause is shown, as would entitle to new trial.*—29 W. Va. 537; 6 Munf. 328; 11 Leigh 241; 14 S. E. Rep. 999.

IV.—*Ida J. Harvey failed to make out her case by offering a policy payable to S. J. Harvey. No assignment shown or explanation of variance made.*—29 Am. Dec. 126; 74 Am. Dec. 77; 67 Am. Dec. 120, 131 (note); 1 Greenl. Ev. § 69 (note 3); 16 Am. & Eng. Ency. 114; Law Dict. 695.

V.—*In order to recover plaintiff must show that immediate notice of loss was given to defendant.*—2 Woods Fire Ins. §§ 436, 437, 430; 25 W. Va. 667–8.

VI.—*Plaintiff could not recover without showing that within thirty days of loss proper proofs were filed with defendant.*—25 W. Va. 667–8.

VII.—*No waiver of proofs by merely investigating and looking at book.*—6 W. Va. 452; 64 N. Y. 136; 30 N. Y. 136; 2 Woods Ins. 943.

VIII.—*Special conditions of policy violated by insured avoid the policy.*—1 May Ins. § 157.

IX.—*Where policy specifically makes statements in application warranties, the falsity of any such statements avoid the policy.*—1 Wood Fire Ins. § 150; 25 W. Va. 652; 1 May Ins. §§ 156, 159.

*Brown, Jackson & Knight* attorneys for defendant in error:

I.—*The pleas in abatement were bad in substance and in form.*—Code, c. 123, s. 2; c. 124, s. 2; 10 W. Va. 507.

II.—*Where record fails to show existence of application, the provisions in the policy referring to application is nugatory.*—133 Ill. 220.

III.—*The defendant company is bound by the action of its local agent.*—21 W. Va. 368; 25 W. Va. 622; 31 W. Va. 851; 43 Kan. 497.

IV.—*The statement of matter in waiver and estoppel filed by plaintiff was no part of the pleadings.*—21 W. Va. 576.

V.—*The defendant was estopped to set up the "Iron Safe" clause.*—1 Wood Fire Ins. § 90; 25 W. Va. 622; 33 W. Va. 526; 43 Kan. 497.

HOLT, JUDGE:

This is an action of *assumpsit* brought in the Circuit Court of Putnam county on the 24th day of December, 1890, by I. J. Harvey against the Parkersburg Insurance Company, of Parkersburg, W. Va., on a policy of insurance from loss by fire dated July 2, 1890. On demurrer to the evidence by defendant company the court gave judgment against the company for one thousand seven hundred and sixty four dollars and seventy seven cents with interest from May 28, 1891, till paid and costs, on which the insurance company obtained this writ of error. The facts are stated in the demurrer to evidence, which is as follows: "Be it remembered that, upon the trial of this case, the said plaintiff, by counsel, produces to the jury, to maintain the issues on her part, the following evidence, namely, the policy in the declaration mentioned, in the words and figures following. (See page 4 of this record for policy.) Proved by E. W. Harvey, that he was on the first day of June, 1890, and has ever since been, the husband, and agent of the plaintiff, I. J. Harvey, mentioned in said policy, and managed and controlled all her business, and as such was solicited by T. A. Vickers, the agent of the defendant, to insure the property of the plaintiff situated at Liberty, Putnam county, W. Va., and at such solicitation furnished such agent figures for an application for a policy as follows: That the stock, when run down, about one thousand four hundred dollars to one thousand five hundred dollars, and when stocked up, about one thousand eight hundred dollars—a general average of about one thousand five hundred dollars; that he had not exact figures at hand, but he believed they were correct; and, on cross-examination, that Vickers asked him if he kept a safe and he said 'No.' Vickers's son then asked him how he kept his books, and he told him he took the daybook and

ledger to his house to post them up, and Vickers said, 'All right.' This memorandum was given to the agent's son in Winfield, about fifteen miles from where the property was, and the answers to the questions asked him were written down on a plain piece of paper, but were neither read to him nor shown to him. He did not think it was on a printed form. He knew nothing more of the policy until he received it of Vickers, the agent, by mail, some time afterwards, and remitted the premium by registered letter, but did not remember whether it was before or after the receipt of the policy, but thinks it was before. That the property insured so owned by the plaintiff consisted of a storehouse and dwelling a few feet apart, connected by a back porch, and was erected in 1887, and was worth about nine hundred dollars. That the furniture insured was worth about two hundred dollars and the stock of goods was worth one thousand four hundred and forty two dollars. That the building and stock were a total loss, and about sixty dollars of the household furniture was saved. That the books, except a small memoranda of the balance of cash on hand each evening during the continuance of the policy in force, and on the night of the fire, were kept each night in the dwelling house, his books being daybook and ledger, and were there at the time of the fire, and were afterwards submitted, some time in August, 1890, to R. J. A. Boreman, secretary of the defendant, who went to Liberty with Vickers, the agent; said secretary going to Liberty to investigate and adjust the loss, said Boreman examining the books and making some extracts therefrom, as he desired. The fire occurred at three o'clock in the morning of August 14, 1890. He was sleeping soundly when he was awakened by his wife, who had been wakened by the light and noise, and when discovered the front part of the store was in flames, which soon afterwards spread to the dwelling, and in a short time consumed both. He made every effort to save property, but only succeeded in getting out about sixty dollars of the furniture. That when the policy arrived he opened it, and read the heading showing the amount of the policy, and the portions put on the different property, and did not read any more, and folded it up and

handed it to his wife to put away, and did not see it again till after the fire. That he only kept disposition of cash on ledger showing sums paid to wholesale merchants and men for hauling, which was all. That he kept no list of sales for cash, but kept a little memorandum book showing balances of cash on hand each evening. The ledger showed credit sales, and purchases and disposition of cash. By deducting from amounts paid to creditors the amount received on credit sales, he could ascertain the amounts received on cash sales. By J. C. Thomas, that he prepared the proof of loss, and forwarded it to the company. And afterwards the plaintiff received the letter filed in evidence as Exhibit B. which is in the words and figures following, to wit:

'Parkersburg, W. Va., Sept. 13, 1890.
'Mrs. I. J. Harvey, Liberty, W. Va.

'Madam:

'The company are in receipt of so-called proof of loss, to substantiate a claim that you appear to have against 'The Parkersburg Insurance Company.' I am requested to object to same, for the following reasons: 1st. No place on or in the papers is the number of policy shown under which claim is made, nor a copy thereof, as requested in all the policies issued by this company. The so-called 'proofs' are sworn to by E. W. Harvey, claiming to be an agent of yours, and no power of attorney attached to show that fact. That no particular account of the loss has ever been received, as requested by all the policies issued by this company. That, even if these proofs were signed by proper persons, the statement, 'and affiant also further says that he does not know how said fire originated,' *etc.*, does not fill requirement 8th of section 9 of our policies. Nor does the certificate of John C. Thomas, living fifteen miles distant, fill the requirements of latter part of same portion of section 9, on which it says, 'and shall procure a certificate under hand and seal of a magistrate or notary public, nearest place of loss,' *etc.* The estimate on building said to have been burned, does not say it is the one for which claim is made on this company; and it is not such a particular account as is indicated by the policy. I take it that it should

be in detail, so that the bill might be mailed to a———, and the order filled correctly. The proofs do not show whether goods or personal property were saved from the fire or not, and, if so, what, and their value. There is no particular account of household goods destroyed, nor of items of stock. No statement is made as to how amount of stock is arrived at when fire occurred, nor are there any bills nor invoices accompanying proofs to show purchases, nor books of account, or even statements to show sales, and what disposition was made of cash taken in. This is all required by section 9 of all our policies, to which section you are hereby referred for complete instructions as to what is necessary to make complete proofs, as all of the matters therein mentioned will be required at your hands before proofs can be accepted. In fact, the condition of the policy under which you claim will be strictly enforced.

"Yours truly,

"R. J. A. BOREMAN, Sec'y."

Whereupon he prepared for the plaintiff and forwarded to the company, as a second proof of loss, the paper filed in evidence as Exhibit C, and thought he mailed said Exhibit C to the company on October 14, 1890—it might have been on the 15th October, 1890—and which was afterward received by the defendant. The notary taking the affidavit to the second proof of loss was the nearest notary or justice of the peace to the place of the fire. And by T. A. Vickers, agent of the defendant at the time the policy was issued, and at the time of the fire, that the memoranda given by E. W. Harvey for the insurance was handed him by his (Vickers's) son, who stayed in the office, and sometimes acted for him. The original memoranda was made out by the son from Harvey's statements, and witness made out the application, taking the figures from the memoranda of the son. That the application forwarded to the company, including the signature, was entirely in the handwriting of witness, except the printed part; was made out after Harvey was gone; and was not seen by Harvey or the plaintiff before it was sent to the company; and did not know whether it had been since. That he put the two thousand nine hundred dollars as 'average stock' from the

footing up that he made of the total value of the property insured, and the one thousand eight hundred dollars 'last invoice' from the estimated stock on hand. That it was his custom to fill these blanks in this way, and that the Phœnix found fault with him for not doing it. That when he wrote to the company about Harvey's policy he told the company he didn't know a country merchant in his field of operations who owned an iron safe. That he could not tell that he wrote this, as to this case, but it was his impression and recollection that he did, 'because it was the only policy on merchandise I obtained from defendant's company.' That on the day before the fire he was at the store of plaintiff, and estimated stock at one thousand four hundred dollars to one thousand five hundred dollars. That he was an old merchant; was with Boreman after fire at Liberty. He said 'I had insured house too high.' Did not object to insurance on goods. He said a man was a fool for carrying so much stock in a country store, but did not know what occurred between Harvey and Boreman, and did not know of any adjustment. And this was all of the evidence offered in the case; wherefore the defendant says that the said evidence is not sufficient to maintain the issues on the part of the plaintiff, and demurs thereto, and prays that the jury may be discharged, and judgment rendered for the defendant.

"THE PARKERSBURG INSURANCE COMPANY.

"By C. D. MERRICK and J. H. NASH, its attorneys."

So far as the record discloses, no serious attack is made on the good faith of the plaintiff, nor question made as to the mere amount of damages found by the jury. The questions raised and discussed by defendant are:

1. The cause of action arose in Wood county, and hence the Circuit Court of Putnam had no jurisdiction. This question the defendant raised by two pleas in abatement to the jurisdiction, filed in proper time.

Plea in abatement No. 2. This was held bad on demurrer. Chapter 123, p. 795, Code (1891) relates to the county in which judicial proceedings may be commenced. The fifth clause was added March 3, 1891, after this suit had been brought. See Acts 1891, p. 138. This chapter

123 of the Code reads in part as follows: "(1) Any action at law or suit in equity, except were it is otherwise specially provided, may hereafter be brought in the Circuit Court of any county—*First*, wherein any of the defendants may reside, except that an action of ejectment or unlawful detainer must be brought in the county wherein the land sought to be recovered or some part thereof is; or, *second*, if a corporation be a defendant wherein its principal office is, or where its mayor, president, or other chief officer resides, or if its principal office be not in this state, and its mayor, president, or other chief officer do not reside therein, wherein it does business. * * * (2) An action may be brought in any county wherein the cause of action or any part thereof arose, although none of the defendants may reside therein."

Section 2, c. 124, p. 796, Code, in part, reads as follows:

"Process from any court, whether original, mesne, or final, may be directed to the sheriff of any county, except that process against a defendant (unless a railroad, canal, turnpike, telegraph, or insurance company be defendant) to answer in any action brought under the second section of chapter 123 of the Code shall not be directed to an officer of any other county than that wherein the action is brought."

Plea No. 2 was not good, because it does not aver that the cause of action did not arise in the county of Putnam, nor any part of said cause of action, and the demurrer was properly sustained.

Plea No. 1 does aver that the "cause of action, if any, did not, nor did any part thereof, arise in the said county of Putnam." The rules of strict pleading still apply in demurrer to pleas in abatement (see section 29, c. 125, Code;) so that material provisions and exceptions must be still averred. In this plea the insurance company appears by its attorneys, and it would *seem* to be defective in both beginning and conclusion.

In *Quarrier* v. *Insurance Co.*, 10 W. Va. 507, it was held that such a plea was fatally defective. "The appearance by a corporation in a plea to the jurisdiction of the court should be in person or by attorney, but may be by its president."

But plaintiff replied to it generally, and the matters of law and fact arising thereof were submitted to the court.

It was admitted that the defendant had and has its principal office at Parkersburg, in the county of Wood. It was shown that the contract of insurance was made in the county of Putnam. The policy was there delivered to plaintiff. The premium was paid there by plaintiff, and the property insured, comprising in part real property, was situated in the county of Putnam. Defendant contends that the breach of duty is the cause of action, no matter what may be its form. On the other hand, it may be said that the cause of action is made up of the contract and the breach of it, and that it takes these two at least, in this and like cases, to constitute the whole cause of action, as meant by implication in the statute; otherwise, the added phrase "or any part thereof" would be without meaning or effect. This section, treating the cause of action as capable of being composed of parts, is of long standing. See 1 Rev. Code 1819, p. 498, and Code 1849 (Ed. 1850) p. 705.

In *Ashby* v. *Kiger*, 3 Rand. (Va.) 50 (1824) it was held that the cause of action—trespass for mesne profits—arose in the county wherein the land was, notwithstanding the defendant resided in a different county when the action was brought. See 1 Rob. Pr. (New) p. 358.

But taking the cause of action in this case as the breach of defendant's duty to pay, then such cause of action arose at some time and place, and as it was the duty of the insurance company to seek the plaintiff, its creditor, where she resided in the county of Putnam, and pay the damages when the time to pay came, the cause of action must have arisen then and there, within the meaning of the statute. And this rule is strengthened somewhat by section 2 of chapter 124, which authorizes the writ of summons to begin the suit against an insurance company to be directed to and executed by the sheriff of any county, the sheriff of Wood county in this case.

Therefore I think the court rightly held that the cause of action, or some material part thereof, arose in the county of Putnam.

Defendant's demurrer to plaintiff's declaration. I. J. Harvey, the plaintiff, is the wife of E. W. Harvey. From this record there is and can be no question that she owned the property insured, made the contract of insurance, and the policy was issued and delivered to her; but the scrivener, in drawing the policy, made a mistake in the first initial letter of her name, putting it "S. J." instead of "I. J." Of this mistake defendant was notified, and thereafter it repeatedly recognized her as the owner of the policy, to whom it had been issued. Plaintiff's declaration is in *assumpsit*, and follows the form prescribed by the statute. Section 61, c. 125, Code. There is no misdescription of the policy to be reached by demurrer. If plaintiff had been assignee, she need not have sued as such, nor made to her name as plaintiff the addition of "assignee." See section 14, c. 99, Id. So that neither at common-law nor under the statute would a demurrer reach the mistake; it could only be reached when the policy should be offered in evidence, and it is there met by showing that the policy was in fact issued to the plaintiff, I. J. Harvey, called "S. J. Harvey" by mistake of defendant, and that "S. J.," mentioned in the policy, and "I. J.," the plaintiff suing, are one and the same person. See *Deitz* v. *Insurance Co.*, 33 W. Va. 526 (11 S. E. Rep. 50); Id., 31 W. Va. 851 (S. E. Rep 616). The declaration being in the form prescribed by section 61, c. 125, of the Code, the defendant pleaded that it was not liable to the plaintiff as in said declaration is alleged, and filed therewith a statement in writing, specifying the seven several grounds of defence.

During the trial there came out in evidence certain facts tending to show that defendant had waived the keeping of an iron safe mentioned in the policy, and the keeping by the plaintiff of her books in her iron safe when the policy was issued, and also waived the same after the property was burned, and was estopped from insisting thereon. During the trial, plaintiff, under section 65, c. 125, wishing and intending to rely upon such matters in waiver and estoppel, asked to file a statement in writing specifying in general terms, such matters, so as to notify defendant of the claim and defence intended to be set up. This the

court permitted, and thereupon the defendant claimed to be thereby taken by surprise, supported such claim by the evidence of the company's agent and secretary, and moved the court to discharge the jury and continue the cause; but the court overruled the motion, and defendant excepted. Such statement has been held to be no part of the pleadings. *Cappellar* v. *Insurance Co.*, 28 W. Va. 576. In *Travis* v. *Insurance Co.*, 28 W. Va. 583, it was the declaration that was amended; here it was notice that plaintiff intended to rely upon evidence as proving waiver and estoppel. The evidence was already in without objection. It related to matters which had taken place between Vickers, the local agent of the company, who negotiated the policy, E. W. Harvey, the agent of plaintiff, and the secretary of the company, who issued and countersigned it. The statute (section 66, c. 125) provides that the court may, as justice may require, permit the statement to be filed or one filed to be amended, or grant further time for filing. To the filing, defendant did not except, but moved for a continuance, which motion was overruled.

To allow such amendment of the pleadings and of the bill of particulars is common practice, when, in the opinion of the court, substantial justice will thereby be promoted; and in such matters the Circuit Court must be allowed a wide discretion, and, to reverse a cause on account of such ruling, error to the probable injury of the party must be made manifest. Here all the parties to the matters set up as waiver and estoppel were present as witnesses, and had testified. I do not see how the defendant could have been injured by the refusal to continue.

Upon the trial the plaintiff offered in evidence the policy sued on; but defendant objected, unless plaintiff would put in evidence with it a certain paper produced by the company, and claimed by it to be plaintiff's written application for the insurance. On this head it was shown that plaintiff's agent, E. W. Harvey, had given the local agent of the company certain facts as *data* for the policy; that the application produced was made out by the company's local agent; that neither plaintiff nor her agent had signed it or ever seen it until produced by defendant at the

trial; but the court overruled the objection, and permitted the policy to be read in evidence on the part of plaintiff without such application, and defendant excepted.

This paper was not offered or read in evidence, nor does it appear in the record, except in defendant's bill of exceptions, mentioned above. The court committed no error in refusing to compel plaintiff to read in evidence with the policy a paper she had never seen or signed by herself or agent; for, under such circumstancas, she would not be bound by it, "and so the clause which refers to it, and attempts to prescribe its place and effect as a part of the contract, and to determine the consequences of misstatement or omissions therein, must be regarded as inapplicable to the facts in the case, and therefore nugatory." *Insurance Co.* v. *Peck*, 133 Ill. 220, 233 (24 N. E. Rep. 538).

During the trial before the jury, the plaintiff introduced in evidence the policy and the testimony of the witness E. W. Harvey, and then announced that she rested her case; and the defendant then moved the court to exclude the evidence from the jury, and for a verdict for defendant; and, while the motion was being considered by the court, the plaintiff asked leave to reopen the case, and offered to introduce the evidence of John C. Thomas and T. A. Vickers, as set forth in the demurrer to evidence, but the court overruled the motion of defendant, and permitted the evidence to be introduced, and defendant again excepted. While the trial and the introduction of evidence is at such a stage of progress, the court may, in its discretion, permit parties to introduce additional, proper, and material evidence when substantial justice and the ending of litigation may seem to require it, and generally it furnishes no proper ground of complaint; at least, I can see no such grounds in this case.

The defendant's demurrer to the evidence. Under this head properly falls the consideration of defendant's seven several statements of special defences filed, as well as the fact whether plaintiff has made out her case by proving to some extent all the facts necessary to a recovery. Taking the latter first, defendant contends that, in order to recover, plaintiff must show that immediate notice of loss was given

to the defendant. The fire occurred at 3 o'clock in the morning of August 14, 1890. Some time in August, 1890 (the exact day does not appear) the secretary and agent of the company were on the ground to adjust the loss. The notice and first proof of loss seem to have been sent about the 20th day of August, 1890. From this it would appear that defendant had prompt notice of the loss.

The plaintiff could not recover without showing that within thirty days of loss proper proofs were filed with defendant. The first proof of loss was received some time before 13th September, 1890. Defendant wrote to plaintiff calling her attention to certain omissions in the proof of loss received, objecting to the same, and closing the letter as follows: "This is all required by section 9 of all our policies, to which section you are hereby referred for complete instructions as to what is necessary to make complete proofs, as all of the matters therein mentioned will be required at your hands before proofs can be accepted. In fact, the condition of the policy under which you claim will be strictly enforced."

. In answer to this, plaintiff sent the second proof of loss, on the 14th or 15th of October, 1890. Whatever may have been the effect of these conditions under the facts as shown, the defendant filed no statement in writing specifying them as matters of defence, which he must do under section 64, c. 125, of the Code, in order to avail himself thereof.

Defendant's seven special defences filed are, in substance, as follows:

(1) Plaintiff's books had been demanded, but not produced. The evidence is: The books were submitted some time in August, 1890, to R. J. A. Boreman, secretary of defendant, who went to Liberty with Vickers, the agent, secretary and Vickers going to Liberty to investigate and adjust the loss, and the said Boreman examining the books and making such extracts therefrom as he desired.

(2) Plaintiff failed to keep her books of account locked in an iron safe. On this point the evidence shows that the books of account were kept at night, to be posted, preserved, etc., at the plaintiff's dwelling house, and were not burned or injured; that she had no iron safe;

that defendant was notified of this before the policy was issued.  The local agent, Vickers, said keeping the books at her house at night would do, as she had no iron safe ; and when the secretary came to adjust the loss he told Vickers, the local agent, "he had insured the house too high, but he did not object to the insurance on the goods ;" and when the policy came it was delivered by the agent to plaintiff, and the premium paid, on the consideration that the books of account were to be safely kept at night at her dwelling house.

The books were in this mode preserved and kept safe, at the instance of defendant, and submitted to the agent of the company for inspection after the fire, and there is no evidence tending to contradict this state of facts.  It did not increase the risk : the defendant suffered no loss; and the change of place for safekeeping was made at defendant's instance and suggestion.  To permit defendant, under such circumstances, to defeat plaintiff's claim to the proper insurance money, upon the ground the plaintiff did not "keep the said inventory and the books securely locked in an iron safe (not a fireproof safe) during the hours that such store is closed for business," would be a fraud upon her, from which I think the defendant is estopped.  See *Schwarzbach* v. *Protective Union*, 25 W. Va. 622.

(3) That plaintiff failed to keep a detailed account of cash sales and of credit sales.  The only evidence on this point shows that she kept a day-book, ledger, and a memorandum book showing cash received.  The ledger showed credit sales, purchases, and cash, and the disposition thereof.  This was a substantial compliance with the requirement, and there is no other evidence of any kind on the subject.

(4) That plaintiff in her application untruly represented the stock at the last inventory to be worth one thousand eight hundred dollars.

(5) The plaintiff in her application untruly represented the average stock at two thousand nine hundred dollars.

(6) That plaintiff in her application untruly represented the property insured to be unincumbered.

(7) That plaintiff in her application untruly represented that the stovepipes in the building insured did not pass

through wooden partitions or floors. These are based on the written application, which is not in evidence, and was not offered in evidence. They are not in the policy, and therefore can not be considered. "When the conditions of a policy relating to misrepresentations or concealments as to the situation or occupancy of the property, or in a clause which refers to an application, plan, survey, or description, assume to make such paper a part of the policy, and a warranty by the insured, and no such paper is shown, the clause which refers to it and attempts to prescribe its place and effect as a part of the contract, and to determine the consequences of misstatements or omissions therein, must be regarded as inapplicable to the facts in the case, and therefore nugatory." *Insurance Co.* v. *Peck*, 133 Ill. 220, 233 (24 N. E. Rep. 538).

As far as I can discern, the plaintiff has not failed in any essential point, but has made against defendant a *prima facie* case for recovery; and such case has not been met and overthrown by defendant in any substantial or essential particular. The judgment of the Circuit Court was right, and must be affirmed.

AFFIRMED.