SIDNEY C. SMITH CORPORATION, *et al.*

*v.*

A. JEROME DAILEY, *Judge, et al.*

(No. 10425)

Submitted October 9, 1951. Decided November 20, 1951.

*Arnold, Crawford & Hyer, Elkins, Pinsky & Mahan,* for relators.

*Brown & Higginbotham, C. S. Kump, John F. Brown* and *H. K. Higginbotham,* for respondents.

Lovins, Judge:

This Court granted a rule in prohibition on the petition of Sidney C. Smith Corporation, Contractors' Supply Corporation, Sidney C. Smith, Sr., and Sidney C. Smith, Jr., who seek a writ prohibiting Honorable A. Jerome Dailey, Judge of the Circuit Court of Randolph County, Atlas Engineering Company, Sam. G. Polino, A. R. Steele, and James Polino, respondents, from proceeding further in an action of assumpsit now pending in that court wherein it is charged that petitioners in this case breached a written contract. The writ of prohibition is sought on the ground that the circuit court has no jurisdiction to hear and determine the action of assumpsit.

Atlas Engineering Company, Sam. G. Polino, A. R. Steele, and James Polino are plaintiffs in the action of assumpsit, and the petitioners and A. R. Steele, Trustee, are defendants therein.

Since the controversy in the action of assumpsit as well as this prohibition proceeding exists between Smith and his co-litigants and Polino and his co-litigants, they will be hereinafter so designated without regard to the position they occupy in the action of assumpsit and in this proceeding.

The corporations which are defendants in the action of assumpsit are West Virginia corporations with their principal offices and places of business in Wheeling, Ohio

County, West Virginia. The individual defendants are residents of Wheeling. Service of process was had on all defendants except A. R. Steele, Trustee, in Ohio County. The corporate plaintiff in the action of assumpsit is a West Virginia corporation with its principal office and place of business in Elkins, Randolph County, West Virginia. The individual plaintiffs are residents of Elkins.

Smith and his co-litigants filed a plea in abatement challenging the jurisdiction of the Circuit Court of Randolph County of the action in assumpsit on the grounds that neither the cause of action, nor any part thereof, arose in Randolph County; that none of the defendants, with the exception of A. R. Steele, Trustee, had their principal offices or residences in Randolph County at the time the action was brought; and that the joinder of A. R. Steele, Trustee, in the action of assumpsit was colorable and was made in an attempt to confer jurisdiction where none otherwise existed.

The plea was timely filed, and, after hearing proof on the issues of fact arising on such plea and the general and special replications filed by Polino and his co-litigants, the trial court ruled that it had jurisdiction. Defendants were given permission to file other pleadings.

The written contract allegedly breached bears date on the 15th day of April, 1949, and was entered into by Sam G. Polino, A. R. Steele, and James Polino, of the first part, and Sidney C. Smith, Sr., and Sidney C. Smith, Jr., of the second part. The contract is set forth in *haec verba* in the second count of the declaration filed in the action of assumpsit. The contract was signed and acknowledged in Elkins, West Virginia, by the parties thereto and was subsequently ratified by the corporate plaintiff and the corporate defendants by appropriate resolutions.

The Atlas Engineering Company will be hereinafter designated as "Atlas", Contractors' Supply Corporation will be hereinafter designated as "Contractors", and Coast Construction Corporation will be hereinafter des-

ignated as "Coast". After the signing of the contract, Coast was reorganized and renamed "Sidney C. Smith Corporation", and will be hereinafter referred to as "Smith Corporation". Smith Corporation succeeded to the rights and assumed the liabilities of Coast created by the contract.

At the time the contract was made, the Polinos and Steele owned sixty-four per cent of the capital stock of Atlas and the Smiths owned thirty-six per cent of such stock. Atlas owned the controlling interest in Coast and Contractors, the number of shares held by other stockholders being nominal. The intention of the parties to the contract was to separate the business affairs of Atlas, Coast and Contractors, and to effectuate a rearrangement of the ownership of the three corporations by placing the ownership of Coast and Contractors in the Smiths and the ownership of Atlas in the Polinos and Steele. According to the contract the parties were to cause Atlas to transfer the stock it owned in Coast and Contractors to the Smiths and the Smiths were to transfer the stock they owned in Atlas to the Polinos and Steele or to Atlas. There is no complaint that such transfers were not made.

It was agreed that immediately upon the execution of the contract, Coast should be vested with title to certain items of personal property listed therein. Other personal property then owned and used by Coast and Atlas, with certain exceptions, was to become the property of Atlas. Certain real estate situate in Ohio County, West Virginia, owned by Atlas, was to be conveyed to Coast.

The contract further provided that the three corporations would cooperate in defense of a claim asserted against them by Robert Richey, and, in the event of an adverse outcome of any proceeding to enforce the claim, any sum awarded Richey up to $8,000 would be paid by Atlas; but if the sum exceeded $8,000, Atlas would pay sixty-four per cent of the excess and Coast and Contractors would pay thirty-six per cent thereof.

Another provision of the contract was to the effect that Coast and Contractors would each pay certain percent-

ages of the aggregate corporate income taxes assessed against the three companies for the year 1948 and prior years. Each corporation, however, was to pay its own income tax for the year 1949.

Other provisions in the contract provided for corporate reorganizations.

All cash, notes, and accounts receivable then in possession of Coast were to be treated as assets derived from four contracts then in process of execution and were to be placed in the custody of A. R. Steele. The money so held by Steele was to be deposited in a separate bank account under the control of Steele. Thereafter, Atlas was to receive all the profits from the four contracts, after deducting overhead costs and expenses of operation, and all money and assets derived from the four projects were to be turned over to Steele. Polino and his co-litigants alleged in the declaration performance of the contract on their part. It is alleged, however, that the defendants have breached the contract in variant particulars, principally by failing to deliver personal property belonging to Atlas and failing to pay over money received by Smith and his co-litigants but rightfully due Polino and his co-litigants under the provisions of the contract. It is alleged that Smith and his co-litigants have failed and refused to endorse checks payable to the defendants, the proceeds of such checks, when realized, being the sole property of Atlas.

The declaration further charges that Smith and his co-litigants have refused to pay certain debts and obligations due Polino and his co-litigants. The declaration avers that Smith and his co-litigants have received various and sundry sums of money and converted the same to their own use though such money rightfully belonged to Polino and his co-litigants. The plaintiffs claim damages in the action of assumpsit in the sum of $41,402.51.

We have not stated in detail the divers and sundry claims asserted against Smith and his co-litigants in the action of assumpsit. The foregoing, however, is sufficient

to disclose in a general way the debts, demands and claims so asserted.

By a general replication, Polino and his co-litigants allege that the cause of action or a substantial part thereof arose in Randolph County. By special replication, Polino and his co-litigants pleaded that the joinder of A. R. Steele as Trustee is not colorable; and that such joinder was necessary in order to obtain a judgment against the trustee for money or property in his hands which should have been paid or delivered to Atlas.

At the hearing on the issues made on the plea in abatement and the replications thereto, Sidney C. Smith, Sr., testified that all the alleged breaches of the contract occurred outside of Randolph County. There is undisputed testimony offered in behalf of Polino and his co-litigants that certain of the vehicles and machinery used on some of the road projects were brought into Randolph County for repairs and that supplies used on at least one of the projects were purchased in Randolph County.

A. R. Steele, who has been a resident of Randolph County for about twelve years, testified that Atlas had a bank account in an Elkins bank; that he, as trustee for the four projects, has kept his funds and books in Elkins; that he has a bank account in an Elkins bank in which he now has on deposit about $1100 belonging to Polino and his co-litigants; and that he had in his custody in Elkins certain insurance checks, the proceeds of which are involved in the alleged breach of contract.

In the joint and several answer filed by Polino and his co-litigants in this proceeding, the facts contained in the replications filed by them in the action of assumpsit are reaffirmed and it is asserted in such answer that the Circuit Court of Randolph County has jurisdiction of the action. The gist of the grounds on which Polino and his co-litigants rely is that the principal office, books, records and bank accounts belonging to Atlas are located in Randolph County; that the two corporations controlled by Smith transacted business in Randolph County; that two

of the defendants in the action of assumpsit are corporations; that A. R. Steele, Trustee, is a resident of Randolph County and has in his hands money and property belonging to the plaintiffs in the action of assumpsit which should be delivered to Polino and his co-litigants; and that the debts and obligations allegedly due Polino and his co-litigants are payable at the place of business and residences of the plaintiffs in Randolph County.

Petitioners demurred to the joint and separate answer and the separate answer of the Judge of the Circuit Court of Randolph County, assigning as grounds that the two answers are legally insufficient and present no defense in this proceeding.

The extraordinary remedy of prohibition is of common law origin. In this jurisdiction the grounds for awarding a writ of prohibition are set forth in a statute reading as follows: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or having such jurisdiction, exceeds its legitimate powers." Code, 53-1-1.

The general jurisdiction of circuit courts is conferred and defined in Article VIII, Section 12, Constitution of West Virginia, which reads in part as follows: "* * * They [circuit courts] shall, except in cases confined exclusively by this Constitution to some other tribunal, have original and general jurisdiction of all matters at law where the amount in controversy, exclusive of interest, exceeds fifty dollars * * *. They shall also have such other jurisdiction, whether supervisory, original, appellate, or concurrent, as is or may be prescribed by law." See Code, 51-2-2.

Jurisdiction is made up of two elements—jurisdiction of the subject matter and jurisdiction of the person. Jurisdiction of the subject matter must exist as a matter of law. *Yates* v. *Taylor County Court*, 47 W. Va. 376, 35 S. E. 24; *Hartford* v. *Davis*, 107 W.Va. 693, 150 S.E. 141; *Hustead* v. *Boggess*, 122 W.Va. 493, 12 S.E. 2d 514. Juris-

diction of the person may be conferred by consent of the parties, or the lack thereof may be waived. *Yates* v. *Taylor County Court, supra; State* v. *Hudson, Judge,* 95 W.Va. 183, 120 S.E. 921; *Robinson* v. *Engle,* 107 W.Va. 598, 149 S.E. 836; *Anderson* v. *Anderson,* 121 W.Va. 103, 1 S.E. 2d 884.

It is well to note that in the case of *Click* v. *Click,* 98 W.Va. 419, 127 S.E. 194, it was held that the inherent and express powers of a circuit court in the issuance of a writ of habeas corpus and determination of the issues thereon made must be exercised within the territorial jurisdiction of the issuing court unless the powers of the court are enlarged "by positive legislative enactment."

Money due under contract, in the absence of a provision to the contrary, is payable to the creditor where he resides. *Harvey* v. *Parkersburg Ins. Co.,* 37 W.Va. 272, 16 S.E. 580; *Insurance Co.* v. *Alexander,* 114 W.Va. 451, 172 S.E. 520. Cf. *State* v. *Jarrett, J. P.,* 90 W.Va. 180, 110 S.E. 568.

The declaration in the action of assumpsit now pending in the Circuit Court of Randolph County discloses that under the provisions of the contract certain moneys were to be paid to A. R. Steele, Trustee, who admittedly resides in Randolph County. A breach of contract having allegedly occurred, the cause of action, if the plaintiffs in the action of assumpsit have such cause, arose in Randolph County. *Guyan Motors* v. *Williams,* 133 W.Va. 630, 57 S.E. 2d 529. Since A. R. Steele is a resident of Randolph County, the principle stated in *Gunnoe* v. *Poultry Ass'n.,* 115 W.Va. 87, 174 S.E. 691, is not applicable.

We find nothing in the record in this proceeding depriving the Circuit Court of Randolph County of jurisdiction of the subject matter of the action of assumpsit. We therefore hold that such court has jurisdiction of the action of assumpsit so far as such jurisdiction relates to the subject matter of that action.

We think that the ultimate question raised by this proceeding relates to jurisdiction of the persons of defend-

ants in the action of assumpsit. But primarily the question here presented is one of venue rather than jurisdiction. "By 'jurisdiction' is meant the inherent power to decide the case; while 'venue' designates the particular county * * * in which a court having such jurisdiction may, in the first instance, properly hear and determine the case." *Southern Sand and Gravel Co.* v. *Massaponax S. & G. Corp.* (Va.), 133 S.E. 812. See *Stanton Trust & Savings Bank* v. *Johnson* (Mont.), 65 P. 2d 1188; *Arganbright* v. *Good* (Cal. App.), 116 P. 2d 186. It may be conceded that suing out process commencing an action in an improper venue may eventually give rise to a failure to obtain jurisdiction of the person.

Smith and his co-litigants invoke the provisions of Code, 56-1-1, 2. Section 1, *id.*, subsection (a) provides that any action at law may be brought in the circuit court of any county wherein any of the defendants may reside, setting forth exceptions not here pertinent.

Admittedly, A. R. Steele, Trustee, resides in Randolph County. Jurisdiction of A. R. Steele, Trustee, having been properly assumed by the Circuit Court of Randolph County, jurisdiction of the other defendants residing in this state was acquired by service of process on them. *Staats* v. *Transit Co.*, 125 W.Va. 473, 24 S.E. 2d 916. But Smith and his co-litigants say that the joinder of A. R. Steele as a defendant in the action of assumpsit is colorable and for the purpose of conferring jurisdiction. We do not agree with that contention. The record shows without dispute that A. R. Steele, Trustee, has in his hands $1100 which plaintiffs in the action of assumpsit contend is payable to them. The failure of A. R. Steele, Trustee, to pay Polino and his co-litigants money which rightfully belongs to them gives rise to an implied contract to pay money, the payment of which is to be made in the county where the plaintiffs reside. *Harvey* v. *Parkersburg Ins. Co.*, *supra*. Therefore, under Code, 56-1-1, the action of assumpsit was properly brought in Randolph County, since one of the defendants resides in that county.

For the sake of discussion, however, assume that the joinder of A. R. Steele, Trustee, as a defendant is colorable. Under Section 2, *id.*, sub-section (a), the cause of action having arisen in Randolph County, and two of the defendants in the action of assumpsit being corporations, the action of assumpsit may be maintained in the circuit court of that county.

Smith and his co-litigants raised the question of jurisdiction of the circuit court of Randolph County by filing a plea in abatement to the jurisdiction. The sufficiency and timeliness of the filing of such plea are not questioned. The plaintiffs replied to the plea in abatement, and the issue thus raised was heard and determined on oral testimony, Smith and his co-litigants making a special appearance. By so appearing, have they waived their right to object to the jurisdiction of their persons? The rule relative to special appearances, as adopted in this jurisdiction, originally was very strict, it having been held: "By appearance to the action in any case, for any other purpose than to take advantage of the defective execution or the non execution of process, a defendant places himself precisely in a situation in which he would be if process were executed upon him, and he thereby waives all objections to the defective execution or the non execution of process upon him." *The Bank of the Valley* v. *The Bank of Berkeley,* 3 W.Va. 386. But such rule has been modified so as to permit a special appearance challenging the jurisdiction of a court over the person or property of a defendant against whom or upon which attachment has been levied; and to permit a special appearance for the purpose of making application for removal of a cause to a court of United States. *Byrd* v. *Rector,* 112 W.Va. 192, 163 S.E. 845. See *Frank* v. *Zeigler,* 46 W.Va. 614, 618, 33 S.E. 761, for a statement of the general rule; also *Patton* v. *Eicher,* 85 W.Va. 465, 102 S.E. 124. There was neither waiver nor consent created by the special appearance of Smith and his co-litigants.

An examination of the declaration in the action of assumpsit discloses that complicated accounts between the

corporate and individual litigants are in issue. But that situation is not an obstacle to the final determination of that action since it is provided by Code, 56-7-10, that a court deeming it necessary may refer a law action to a commissioner to take and state accounts between the parties.

Prohibition does not issue as a matter of right in cases where it does not clearly appear that a petitioner is entitled to that remedy, and before such petitioner is entitled to that remedy there must be a clear showing that a trial court has no jurisdiction to hear and determine the case or has exceeded its legitimate powers. *Fisher* v. *Bouchelle,* 134 W. Va. 333, 61 S.E. 2d 305, 306; *State* v. *O'Brien,* 100 W.Va. 163, 130 S.E. 111.

The record in this proceeding does not disclose that the Circuit Court of Randolph County is without jurisdiction of the subject matter or the persons involved in the action of assumpsit. Nor is there any showing that such court has exceeded its legitimate powers. It may be said that the action of assumpsit pending in that court is difficult of determination because of the complicated accounts, but that situation affords no ground for granting the extraordinary remedy of prohibition.

Though unnecessary for a decision of this proceeding, we deem it advisable to observe, without deciding the question, that the determination of the controversy existing between Smith and his co-litigants and Polino and his co-litigants perhaps could be more completely and satisfactorily made in a court of equity.

According to the foregoing, the rule awarded in this proceeding in prohibition is discharged and the writ prayed for is denied.

*Writ denied.*