MAUD A. STAPLES, *et al.* DBA T. C. STAPLES
CONSTRUCTION COMPANY

*v.*

LEFT FORK FUEL COMPANY, *a Corporation*

(No. 10568)

Submitted September 15, 1953. Decided October 20, 1953.

*Mahan, White & Higgins, John A. Lile,* for plaintiff in error.

*Kay, Casto & Chaney, Robert H. C. Kay,* for defendant in error.

LOVINS, JUDGE:

Maud A. Staples, W. A. Staples and H. H. Staples, a partnership, doing business as T. C. Staples Construction Company, filed a notice of motion for judgment in the Circuit Court of Nicholas County, against Left Fork Fuel Company, a corporation.

The purpose of this proceeding is to recover money due the plaintiffs for the rental of certain road building machinery from December 1, 1949, to and including December 11, 1951, amounting to $42,574.57, and the sum of $45.45 for machinery parts furnished defendant by plaintiffs in the month of October, 1951.

Plaintiffs filed a verified and itemized statement of their account with their notice of motion. Defendant appeared specially and filed a verified plea in abatement, challenging the jurisdiction of the trial court on the grounds that Nicholas County was not the proper venue. Defendant also filed a verified plea of the general issue, denying that it owed plaintiffs any amount. A trial of issues so made resulted in a jury verdict in the amount of $44,701.58, the jury in its verdict having added the sum of $2081.56 to the amount claimed by plaintiffs, evidently as interest.

The trial court, after overruling motions to set aside its verdict and in arrest of judgment, entered judgment for the amount therof. Defendant prosecutes this writ of error.

The notice of motion for judgment was returnable on the 1st day of March, 1952. Service of notice was accepted by the Auditor of the State of West Virginia, more than twenty days prior to the return date, and was filed in the office of the clerk of the trial court more than five days before such return date.

By agreement of counsel, a trial of the action was continued to the May, 1952 term of court. At such May term, the action was placed on the trial docket for hearing on the 29th day of May, 1952. On the day so fixed, the defendant appeared specially and, by agreement, filed the plea in abatement above mentioned, to which the plaintiffs replied generally, no objection having been made for failure to timely file such plea.

After an extended colloquy between counsel for plaintiffs and defendant and the judge of the trial court, the plea in abatement was "overruled". Upon the rejection of the plea in abatement, defendant moved for a continuance, which was likewise overruled, and the trial on the merits commenced.

This writ of error involves a jury verdict in favor of the plaintiffs. We therefore treat as facts those shown by the testimony adduced in behalf of the plaintiffs, though there is conflicting evidence showing a different state of facts adduced by the defendant. *Wiseman* v. *Ryan*, 116 W.Va. 525, 182 S. E. 670. See *Meyn* v. *Auto Co.*, 118 W.Va. 545, 191 S. E. 558; *Coleman* v. *Railway Co.*, 100 W.Va. 679, 131 S. E. 563.

The plaintiffs, whose primary business is that of road building, were engaged in strip mining of coal, near the line between Nicholas and Greenbrier Counties. The defendant was engaged in a similar mining operation near that of the plaintiffs. The defendant hauled, by motor truck, the coal it mined over and upon a certain private roadway. It seems that the plaintiffs and defendant were engaged in negotiations relative to the plaintiffs leasing land either owned by, or leased to the defendant. In the course of these negotiations, W. A.

Staples, who seems to have been the managing partner of plaintiffs' operations, was informed by the president of defendant company, that the road over which defendant hauled the coal was in bad condition, and that the equipment theretofore used by the defendant in keeping the road in repair had broken down. W. A. Staples, accordingly, sent a motor grader, a carryall and tractor, and a bulldozer to the operation of defendant on different dates. Employees of the plaintiffs operated some of the equipment on the road used by the defendant. The plaintiffs paid certain wages and charges for two of these employees until the employees were placed upon the payroll of defendant.

Plaintiffs also furnished certain parts for the machinery. Different statements were rendered by the plaintiffs for the charges against defendant for wages, workmen's compensation charges, unemployment compensation charges, employer's social security and most of the equipment parts. All of the statements so rendered seem to have been paid to plaintiffs at Summersville, West Virginia.

The statements of charges furnished by the plaintiffs to the defendant had written thereon: "Please Remit To Our Field Office At Summersville, W.Va.". In one of the letters transmitting such statements, plaintiffs informed defendant that the statement did not include the equipment rentals.

On August 7, 1951, the plaintiffs rendered a statement of charges to defendant for rental of machinery amounting to $22,992.25. Accruals of rentals subsequent to July 31, 1951, increased the amount due for rentals of equipment and some of the equipment parts, with interest, to $44,701.58.

On one occasion, the president of the defendant went to the field office of the plaintiffs at Summersville, and there discussed with W. A. Staples the question of payments of the equipment rentals. On that occasion, the president of the defendant attempted to

obtain an agreement with two other persons who were mining coal on the defendant's land and using the road above mentioned, to the effect that such persons would pay a portion of the equipment rentals, but nothing resulted from that attempt.

The defendant takes the position that it was under the impression that the plaintiffs furnished the equipment as a mere gratuity and for mutual benefit and advantage in keeping the road ready for use.

The defendant, however, through its president, admits that all rentals of machinery accruing after August 7, 1951, amounting to $10,285.55, with accrued interest of $259.65, aggregating the sum of $10,645.20, is due the plaintiffs.

The defendant offered evidence to show that the plaintiffs had not complied with the statutes and regulations relating to price stabilization, enacted and promulgated by the government of the United States. Upon objection, the court rejected the testimony and thereupon the defendant vouched the record. The avowal of this testimony shows that the plaintiffs did not comply with the regulations of the Office of Price Stabilization, but it is shown that the plaintiffs and defendant changed the basis of rental charges for some of the equipment from a monthly rate to an hourly rate, and that plaintiffs received informal permission for such change from the Office of Price Stabilization. The record fails to disclose that there was any overcharge made by the plaintiffs against the defendant. The change from an hourly basis to a monthly basis on rental of some of the equipment was made after plaintiffs and defendant had agreed to such change, made at the request of the defendant.

Defendant contends that the trial court erred: (a) In overruling defendant's motion for a continuance, and compelling a trial on the merits immediately after rejecting the plea in abatement; (b) in rejecting the defendant's plea in abatement without a trial of the issues raised by that plea; (c) in rejecting evidence relative

to violations of the regulations and statute concerning price stabilization as to the rental of machinery; (d) in refusing to give defendant's instruction number 1 as offered.

There was a colloquy between counsel for the litigants and the judge of the trial court, relating to the continuance and the plea in abatement, which covers approximately twenty pages of the printed record. Many uncertain and indefinite statements are found in such colloquy. There is no formal showing in the record that would justify the trial court in sustaining the motion for a continuance. A motion for a continuance is addressed to the sound, but reviewable, discretion of the trial court. *Hutchinson* v. *Park Corp.*, 128 W.Va. 419, 424, 36 S. E. 2d 889. See *State* v. *McDonie*, 96 W.Va. 219, 123 S. E. 405; *State* v. *Jones*, 84 W. Va. 85, 99 S. E. 271. The court did not abuse that discretion in overruling the motion made by the defendant for a continuance.

The plea in abatement is not demurrable as a pleading. There was sufficient averment in the plea, which, if sustained by proof, may have ended the case. That plea however, brought in question the controlling fact on the merits involved in this proceeding, i. e., was the machinery owned by the plaintiffs, and admittedly used by the defendant, loaned to the defendant as a gratuitous bailment, or, was there an implied contract on the part of the defendant to pay for its use.

There was another question raised by the plea which was virtually controlling as to venue. Was the Circuit Court of Nicholas County the proper forum for the trial of this action? An answer to that question depends upon whether the cause of action, or a part thereof, arose in Nicholas County.

We cannot say that the defendant's counsel waived a trial on the issue arising on the plea in abatement, either by the judge of the trial court or by a jury.

The plea in abatement involves a factual appraisal of

the merits of the action. If the trial court, however, committed error in rejecting the plea in abatement, it was harmless error. "If the jurisdiction of the trial court sufficiently appear from any part of the record, this court will not reverse a final judgment rendered upon the merits, on account of error committed in the trial of an issue on a plea to the jurisdiction." *Danser* v. *Dorr,* 72 W.Va. 430, 78 S. E. 367. The subject of venue will be hereinafter discussed.

Bearing in mind what has been said, with reference to the plea in abatement, we now come to the question of whether the Circuit Court of Nicholas County was the proper forum for trial of this proceeding. A Circuit Court is a court of general jurisdiction. Article VIII, Section 12, Constitution of West Virginia. Code, 56-1-2, reads in part as follows: "An action, suit or proceeding may be brought in any county wherein the cause of action, or any part thereof, arose, although none of the defendants reside therein, in the following instance: (a) When the defendant, or if more than one defendant, one or more of the defendants, is a corporation; * * *".

The legality of venue of this action finally rests on whether the cause of action, or any part thereof, arose in Nicholas County. "A cause of action, within the meaning of §2 of ch. 123 of the Code [Code, 56-1-2], consists of a duty upon the part of one toward another, and the violation or breach of that duty." *Jones* v. *Coal Company,* 84 W.Va. 245, 99 S. E. 462. Therefore, it follows that if the plaintiffs are correct in claiming a debt due from the defendant to them, the cause of action consists of the failure of the defendant to pay such debt. Where did that breach occur? At the office of defendant, the residence of plaintiffs, or at their field office in Summersville.

In the absence of an agreement providing otherwise, it is the duty of a debtor to seek the creditor at his residence and make payment there. *Harvey* v. *Parkersburg Ins. Co.,* 37 W.Va. 272, 16 S. E. 580. "In the absence of an agreement to the contrary the place of the residence

of the creditor is the place of payment of a debt. It is the duty of the debtor to seek his creditor and make payment to him." *Jones* v. *Coal Company, supra.* See *Insurance Co.* v. *Alexander,* 114 W.Va. 451, 172 S. E. 520; *Danser* v. *Dorr, supra; State* v. *Jarrett, J. P.,* 90 W. Va. 180, 110 S. E. 568; *Guyan Motors* v. *Williams,* 133 W.Va. 630, 57 S. E. 2d 529, 530; *Sidney C. Smith Corp.* v. *Dailey,* 136 W. Va. 380, 67 S. E. 2d 523, 527.

The record shows that W. A. Staples was in reality the managing partner of the plaintiffs' partnership, and that he resided in Summersville, Nicholas County, that H. H. Staples lived temporarily in Summersville and that Maud A. Staples, the other partner, was in Richmond, Virginia. The statement of charges rendered by the plaintiffs to defendant directed payment to be made at the field office of the plaintiffs' at Summersville. We do not mean to say that the plaintiffs, by such direction, can control venue, by requesting payment to be made at a certain place; or designate the court in which a cause is to be tried. We note however, that several payments for labor and other charges due from plaintiffs to defendant were made at their field office in Summersville. It seems that the plaintiffs' and defendant's conduct indicate a situation, which was tantamount to an agreement that payment should be made at Summersville. Moreover, the defendant, on one occasion, went to the field office of plaintiffs' at Summersville and discussed the payments of the debt here in question.

Upon consideration of the entire record, we reach the conclusion that the place of payment of the debt, which is the subject of this proceeding, was in Nicholas County; the defendant having failed to pay therein, the cause of action arose in that county. These facts, we think, eliminated any error in the ruling of the court on the plea in abatement, since a trial on the merits satisfactorily shows that the debt was payable in Nicholas County. Thus, the error in rejecting the plea in abatement, if error there was, is harmless.

Coming to the trial on the merits, there is direct conflict in the testimony adduced by the plaintiffs and defendant. We are convinced that there is sufficient evidence upon which to base a verdict that there was an implied contract between the plaintiffs and defendant, to pay the usual and customary price as rentals for machinery belonging to plaintiffs, and used by the defendant. The defendant acknowledged the sum of $10,645.20 as due, being the amount accrued after the rendition of plaintiffs' statement dated August 7, 1951, with interest accrued thereon. This is a circumstance tending to support the plaintiffs' theory of this case. A jury having resolved that issue in favor of plaintiffs, we are not disposed to disturb it.

*Gunnoe* v. *Poultry Ass'n.*, 115 W.Va. 87, 174 S. E. 691, has no application to this case. In the *Gunnoe* case, this Court found where an individual and corporation were joined as defendants and that there was no cause of action against the corporate defendant, the venue of the action laid in Raleigh County, did not exist. *Jones* v. *Coal Co.*, 82 W.Va. 506, 96 S. E. 797, likewise is inapplicable. In that case, the controlling question was whether this Court had jurisdiction upon certificate, to review the findings of the Circuit Court of Cabell County. This Court held that it had no jurisdiction to review such findings, except on writ of error.

We are cited a number of authorities with reference to the applicability of the statute of the United States of America for the stabilization of prices for services and commodities. We have carefully examined the record in the light of those authorities, and we disclaim any thought that proper constitutional statutes and lawful regulations touching the price of services and commodities are not controlling on the state courts. But, we do not think that those statutes and regulations, in view of the avowals made in this record, are a defense to the instant action. We reach that conclusion for the reason that the charges made by the plaintiffs for the rental of

articles of equipment are not shown to have exceeded the maximum prices established by the statute and regulations, relating to the charges to be made. It may be that the plaintiffs violated such statute and regulations of the Federal Government in not filing their charges with the Office of Price Stabilization. That fact, however, though established by the avowals, is not relevant to the issue between the plaintiffs and defendant. If such violation in fact took place, the plaintiffs may be amenable to proper official action by the Office of Price Stabilization, or its successors. An inquiry on that subject is beyond the scope of this opinion, and hence it is unnecessary to discuss such alleged violation.

It may be conceded, without deciding, that those regulations and statutes bind state courts, as well as the authorities of the Federal Government. See *Mondou* v. *New York N. H. & H. R. Co.*, 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed 327.

The plaintiff, W. A. Staples, testified that he had informal permission from the Office of Price Stabilization to change the basis of his charges, from a monthly rate to an hourly rate. This record clearly shows that such change of rates benefited the defendant.

Defendant assigns as error, the giving of an instruction on behalf of plaintiffs, over objection of defendant. One instruction was offered by the defendant and was given without objection. The defendant offered a number of instructions, five of which were given in the absence of objection by plaintiffs.

Instruction number 1, as first offered by defendant, was refused. After amendment, it was again refused. After a second amendment, it was given.

From the preceding paragraph, the assignment of error, with reference to the giving and refusal of instructions, is confined to the refusal of defendant's instruction number 1, as offered, which reads as follows: "The Court

instructs the jury that in order to make a contract, the minds of the parties must meet—there must be a coming together in complete accord in the minds of both parties as to the subject matter, price and other essential elements alleged by the plaintiffs in this case. *And the Court further instructs the jury that the fact that Staples Construction Company furnished road equipment to the defendant, Left Fork Fuel Company, and the same was taken and used by Left Fork Fuel Company, without any discussion of terms or rental charges, does not raise the presumption that a contract to pay the rentals alleged by the plaintiffs was agreed to by Left Fork Fuel Company."*

Defendant's instruction number 1, as amended the first time, did not materially change its context. As amended a second time, the instruction was simplified by striking out the italicized portion of the instruction as first offered and then given.

We think the vice of plaintiffs' instruction number 1, as first offered, and as offered the second time, was that it tended to mislead and confuse the jury. Instruction number 1, as first offered, was so worded that the defendant could have escaped payment for using the machinery belonging to the plaintiffs, in the absence of some discussion concerning terms and rental charges. In the circumstances disclosed, it was the duty of the defendant to ascertain if the plaintiffs were charging them for use of valuable machinery for a long period of time, and the rates of such charges. There was no error in the refusal of instruction number 1, as twice offered. *State* v. *Craig*, 131 W.Va. 714, 51 S.E. 2d 283; *Wilson* v. *City of Elkins*, 86 W.Va. 379, 103 S. E. 118. See *Franklin* v. *Pence*, 128 W.Va. 353, 364, 36 S. E. 2d 505. All other instructions offered by the defendant were given.

We find no prejudicial error in this record, and accordingly, the judgment of the Circuit Court of Nicholas County, is affiirmed.

*Affirmed.*