IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

No. 14-1266

_____

**FILED**

**June 8, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WADE PAINTER,
Petitioner Below, Petitioner

v.

DAVID BALLARD, WARDEN,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Tod J. Kaufman, Judge
Civil Action No. 14-P-520

AFFIRMED IN PART AND REVERSED IN PART

_____

Submitted: February 10, 2016
Filed: June 8, 2016

George Castelle, Esq.                          Patrick Morrisey, Esq.
Kanawha County Public Defender Office          Attorney General
Charleston, West Virginia                      John H. Boothroyd, Esq.
Counsel for the Petitioner                     Assistant Attorney General
                                               Charleston, West Virginia
                                               Counsel for the Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE KETCHUM dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

For the purpose of ensuring that an inmate satisfies his or her court-ordered financial obligations, W. Va. Code § 25-1-3c(c)(1) (2005) permits the Division of Corrections to make deductions from funds provided to the inmate by family or friends. The exclusion of "funds provided inmates by family or friends" from the definition of "earnings" in Policy Directive 111.06(III) (2006), a legislative rule promulgated by the Division of Corrections, is arbitrary and capricious and therefore may be ignored.

Benjamin, Justice:

Petitioner Wade Painter, an inmate at Mount Olive Correctional Complex ("Mount Olive"), challenged by writ of mandamus in the Circuit Court of Kanawha County ("Kanawha circuit court") deductions made by respondent David Ballard, Warden of Mount Olive, from Mr. Painter's inmate account to pay court-ordered restitution. Mr. Painter asserts that West Virginia law prohibits the Warden from deducting funds from Mr. Painter's inmate account that were gifted to him by family and friends. In an October 29, 2014, order, the Kanawha circuit court dismissed the petitioner's writ of mandamus, concluding that the Warden's deductions complied with the law, and further that the Kanawha circuit court was not the proper venue for the action and that the court did not have jurisdiction over the matter.

We conclude that funds gifted to an inmate by family and friends may be subject to deduction by the Warden to pay court-ordered restitution, and to the extent the disposition adopted by the circuit court corresponds with our decision on this issue, we now affirm. However, we disagree with the conclusion that the Kanawha circuit court was not the proper venue for the action and that it lacked jurisdiction, and we reverse the court's order on those two points.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1

A jury convicted Mr. Painter of daytime burglary, grand larceny, daytime burglary with breaking, petit larceny, two counts of murder in the first degree, and possession of a stolen vehicle. By order entered November 27, 2007, ("sentencing order") the Circuit Court of Berkeley County ("Berkeley circuit court"), sentenced him to an indeterminate sentence of one to ten years for daytime burglary, an indeterminate sentence of one to ten years for grand larceny, an indeterminate sentence of one to fifteen years for daytime burglary with breaking, a determinate sentence of one year for petit larceny, two determinate sentences of life without mercy for two murders, and an indeterminate sentence of one to five years for possession of a stolen vehicle. The court ordered that the sentences be served consecutively. The Berkeley circuit court also ordered that the petitioner pay restitution[1] as follows:

> It is further ORDERED that the Defendant shall pay restitution through the Clerk of this Court in the amount of $4472.00 to the victim Deborah White . . . and *said restitution shall be paid from monies contained within any prison account or any assets of the defendant.*
> It is further ORDERED that the Defendnat [sic] shall pay restitution through the Clerk of this Court in the amount of $2520.00 to the victim Carl Norberg . . . and *said*

---

[1] The Berkeley circuit court's authority to order restitution is derived from W. Va. Code § 61-11A-4(a) (2006), which provides, in part:

> The court, when sentencing a defendant convicted of a felony or misdemeanor causing physical, psychological or economic injury or loss to a victim, shall order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense, unless the court finds restitution to be wholly or partially impractical as set forth in this article.

*restitution shall be paid from monies contained within any prison account or any assets of the defendant.*

It is further ORDERED that the Defendant shall pay restitution through the Clerk of this Court in the amount of $12,000.00 to the Crime Victims's [sic] Fund, 1900 Kanawha Blvd. East, Room W-334, Charleston, West Virginia and *said restitution shall be paid from monies contained within any prison account or any assets of the defendant.*

(Emphasis added).[2]

Mr. Painter commenced serving his prison sentence at Mount Olive in Fayette County. Thereafter, he was provided with a Notice of Withholding by the West Virginia Division of Corrections ("DOC"). In addition to listing the amounts owed in restitution and to whom those amounts were owed, the Notice of Withholding provided:

Commencing on or about the 21 day of October, 2008 deductions from your account will commence. Deductions will be based upon 40% of your earnings. Earnings are defined as all sums of money paid to an inmate on account of any work assignment, or other allowable means by which an inmate may be compensated for work performed or goods sold, including earnings from work in correctional industries and indigent pay. Earnings shall also include 40% of the proceeds from any arts and crafts sale. Earnings shall further include all sums of money received by the inmate on account of a settlement of a lawsuit, civil judgment, or other lawful process, inheritance, bequest, gift, *except funds provided the*

---

[2] The record shows that Mr. Painter appealed his conviction to this Court and that the Court refused his appeal by order entered February 9, 2009. The record also shows that Mr. Painter filed a motion in the Berkeley circuit court, *pro se*, on May 5, 2014, to amend the order requiring that he pay restitution. The Berkeley circuit court denied the motion by order entered May 28, 2014. Neither the motion nor the order denying it is included in the record.

*inmate by family or friends*. Earnings shall not include sums deducted for mandatory savings.

You may dispute these charges by filing a grievance pursuant to Policy Directive 335.00. You should, however, be aware that the Division of Corrections cannot alter or reduce obligations imposed by outside authorities.

(Emphasis added).

By grievance dated March 13, 2014, Mr. Painter challenged the DOC's deductions from his account. Specifically, he argued that pursuant to W. Va. Code § 25-1-3c(c)(1) (2005) and the DOC's own rule, Policy Directive No. 111.06(III) (2006), funds provided to him by friends and family should not be subject to deductions for restitution payments. W. Va. Code § 25-1-3c(c)(1) provides:

> (c)(1) The warden shall deduct from the *earnings* of each inmate, legitimate court-ordered financial obligations. The warden shall also deduct child support payments from the *earnings* of each inmate who has a court-ordered financial obligation. The Commissioner of the Division of Corrections shall develop a policy that outlines the formula for the distribution of the offender's income and the formula shall include a percentage deduction, not to exceed forty percent in the aggregate, for any court ordered victim restitution, court fees and child support obligations owed under a support order, including an administrative fee not to exceed one dollar, consistent with the provisions of subsection c, section four hundred six [§ 48-14-406], article fourteen, chapter forty-eight of this code, to support the Division of Correction's administration of this financial service.

4

(Emphasis added). Policy Directive 111.06, which was promulgated pursuant to W. Va.

Code § 25-1-3c(c)(1),[3] provides:

> **Earnings:** All sums of money paid to an inmate on account of any work assignment, or other allowable means by which an inmate may be compensated for work performed or goods sold, including earnings from work in correctional industries and indigent pay. Earnings shall also include 40% of the proceeds from any arts and crafts sale. Earnings shall further include all sums of money received by the inmate on account of a settlement of a lawsuit; civil judgment; or other lawful process, inheritance, bequest, gift, *except funds provided the inmate by family or friends*. Earnings shall not include sums deducted for mandatory savings.

(Emphasis added).

The parties do not dispute that the grievance was denied and that Mr. Painter ultimately

exhausted his administrative remedies.[4]

---

[3] W. Va. Code § 25-1-3c(c)(1) directs the Commissioner of the DOC to develop a policy for the deduction and distribution of an inmate's income for court-ordered restitution, court fees, and child support. The Policy Directives Manual containing this policy was incorporated into the West Virginia Code of State Rules as a legislative rule. W. Va. Code R. § 90-1-2 (1987) ("The Policy Directives Manual is hereby incorporated by reference as a legislative rule."). Contrary to the assertion of the Warden in the present appeal, because the policy is a legislative rule, it "has the force and effect of law." Syl. pt. 5, in part, *Smith v. W. Va. Human Rights Comm'n*, 216 W. Va. 2, 602 S.E.2d 445 (2004).

[4] W. Va. Code § 25-1A-2(c) (2013) provides: "An inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted."

5

Mr. Painter filed a petition for writ of mandamus, *pro se*, in the Circuit Court of Fayette County ("Fayette circuit court"). He repeated the argument made in his grievance. The Fayette circuit court entered an order on September 10, 2014, dismissing the petition for improper venue. The Fayette circuit court determined that

> [i]f the Petitioner wishes to challenge the manner in which the [DOC] carries out the specific orders of the Circuit Courts of West Virginia, or the application of state wide correctional polices, then venue would be proper in Kanawha County Circuit Court. Alternatively, if the Petitioner wishes to seek a clarification of the language used in the *Sentencing Order*, then venue would be proper in the Circuit Court of Berkeley County. Regardless of the Petitioner's choice, this [c]ourt is of the opinion that venue for the Petition, as molded, is improper before the Circuit Court of Fayette County, West Virginia.

Thereafter, Mr. Painter filed his petition for writ of mandamus, *pro se*, in the Kanawha circuit court, again arguing that funds provided to him by friends and family should not be subject to deductions for restitution payments. The Warden filed a motion requesting that the court dismiss the petition. The court, by order entered October 29, 2014, granted the Warden's motion to dismiss on the following two grounds:

1. The Circuit Court of Berkeley County, West Virginia, has ordered that restitution in *State v. Painter*, 06-F-24, be paid from monies contained within any prison account or any assets of the Defendant/Petitioner. In as much as the Petitioner seeks that this [c]ourt to [sic] set aside or to [sic] interpret the intent of another Circuit Court's Sentencing Order regarding restitution, venue and

6

jurisdiction is improper and dismissal is required pursuant to West Virginia Rules of Civil Procedure, 12(b)(1) and (3).[5]

2. West Virginia Code, § 25-1-3c does not limit the authority of a Circuit Court to order restitution and have such restitution collected from an inmate by the [DOC]. A Circuit Court's order of restitution may include all sources of the Defendant/Petitioner's assets and is not limited to those sources of a prisoner's "earnings" as defined by the [DOC] Policy Directive 111.06. Dismissal is required pursuant to West Virginia Rules of Civil Procedure, 12(b)(6).[6]

(Footnotes added).

Mr. Painter now appeals to this Court the Kanawha circuit court's October 29, 2014, order dismissing his petition for writ of mandamus. He filed a brief with this Court *pro se*, the Warden responded, and Mr. Painter filed a reply brief *pro se*. Upon placing the case on the argument docket, the Court ordered the appointment of counsel to Mr. Painter. Mr. Painter's appointed counsel, on Mr. Painter's behalf, filed a supplemental brief, the Warden responded, and the petitioner, through counsel, replied.

## II. STANDARD OF REVIEW

---

[5] W. Va. R. Civ. P. 12(b)(1) permits a court, on a defendant's motion, to dismiss an action for "lack of jurisdiction over the subject matter." W. Va. R. Civ. P. 12(b)(3) permits dismissal for "improper venue."

[6] W. Va. R. Civ. P. 12(b)(6) permits a court, on a defendant's motion, to dismiss an action for "failure to state a claim upon which relief can be granted.

Mr. Painter appeals the Kanawha circuit court's dismissal of his writ of mandamus for improper venue, lack of jurisdiction, and failure to state a claim upon which relief can be granted. In reviewing a circuit court's order granting a motion to dismiss, this Court applies a *de novo* standard of review. Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."); *see also Shaffer v. W. Va. Dep't of Transp., Div. of Highways*, 208 W. Va. 673, 542 S.E.2d 836 (2000) (applying a *de novo* standard of review to the appeal of a dismissal of a petition for writ of mandamus); *Ferguson v. Seifert*, 12-1195, 2013 WL 5508430, *1 (W. Va. Oct. 4, 2013) ("We review the circuit court's dismissal of the petition for a writ of mandamus *de novo*."); *Jones v. W. Va. Pub. Emps. Ret. Sys.*, No. 101327, 2011 WL 8183115 (W. Va. Sept. 23, 2011) (memorandum decision) (applying a *de novo* standard of review to the appeal of a dismissal of a petition for writ of mandamus).

We observe that for Mr. Painter to be entitled to the requested writ of mandamus, "the legal prerequisites for mandamus relief [must be] present." *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 214, 470 S.E.2d 162, 168 (1996). Those prerequisites are "(1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy." Syl. pt. 2, in part, *Myers v. Barte*, 167 W. Va. 194, 279 S.E.2d 406 (1981).

8

## III. ANALYSIS

This appeal presents two distinct legal issues: (1) whether Mr. Painter's writ of mandamus was properly filed in the Kanawha circuit court and (2) whether the Warden may make deductions from money gifted by family and friends to pay Mr. Painter's court-ordered restitution obligation.

### A. The writ was properly filed in the Kanawha circuit court.

The Kanawha circuit court determined that because Mr. Painter's writ of mandamus sought "to set aside or to interpret the intent of [the Berkeley circuit court's] Sentencing Order," venue was improper in the Kanawha circuit court and that the Kanawha circuit court lacked jurisdiction. Venue and jurisdiction are threshold issues; unless the proper venue and jurisdiction are both established, the court in which the action commenced does not have the authority to decide the merits of that action. *See* 77 Am. Jur. 2d *Venue* § 1 (2016) ("A trial court without venue lacks authority to issue an order or judgment . . . ."); syl. pt. 1, *Hinkle v. Bauer Lumber & Home Bldg. Ctr., Inc.*, 158 W. Va. 492, 211 S.E.2d 705 (1975) ("Whenever it is determined that a court has no jurisdiction to entertain the subject matter of a civil action, the forum court must take no further action in the case other than to dismiss it from the docket."). The distinction between venue and jurisdiction is simple: "Jurisdiction is the inherent power of a court to decide a case. Venue designates the particular county in which a court having jurisdiction may, in the first instance, properly hear and determine a case." *W. Va. Secondary School*

*Activities Comm'n v. Wagner*, 143 W. Va. 508, 520, 102 S.E.2d 901, 909 (1958) (citing

*Sidney C. Smith Corp. v. Dailey*, 136 W. Va. 380, 67 S.E.2d 523 (1951)).

Mr. Painter argues that the Kanawha circuit court's decision was in error on the issues of venue and jurisdiction. He contends that his writ of mandamus seeks to compel a public official, the Warden, to comply with West Virginia law and that the relief he seeks does not require interpretation of the Berkeley circuit court's sentencing order. Furthermore, he asserts that the Kanawha circuit court is not merely the proper court to decide his writ in mandamus but that it is the *only* circuit court that may entertain the writ. The Warden adopts the Kanawha circuit court's position regarding venue and jurisdiction in this appeal.

This Court has recognized that "[m]andamus is a proper remedy to require the performance of nondiscretionary legal duties by" a state official. *State ex rel. Wheeling Downs Racing Ass'n v. Perry*, 148 W. Va. 68, 72, 132 S.E.2d 922, 925 (1963). We agree with Mr. Painter that what he seeks in this case is to compel the Warden, a state official, to perform his nondiscretionary legal duty, i.e., to make deductions from his inmate trust account in compliance with W. Va. Code § 25-1-3c(c)(1) and Policy Directive 111.06. Contrary to the assertions of the Kanawha circuit court and the Warden, the relief sought by Mr. Painter does not require interpretation of the Berkeley circuit court's order; it requires an examination of the laws setting forth the Warden's

10

nondiscretionary legal duty regarding deductions from inmate accounts for the purpose of paying the ordered restitution.

With regard to jurisdiction, the Constitution of West Virginia establishes that "[c]ircuit courts shall have original and general jurisdiction . . . of proceedings in . . . mandamus . . . ." W. Va. Const. art. XIII, § 6. With regard to venue, this Court has recognized that when a writ of mandamus is brought against a state official, the proper venue in which to litigate the claims raised therein is, exclusively, the Kanawha circuit court. Syl. pt. 2, *State ex rel. Stewart v. Alsop*, 207 W. Va. 430, 533 S.E.2d 362 (2000) ("'Actions wherein a state agency or official is named, whether as a principal party or third-party defendant, may be brought only in the [Kanawha circuit court].'" (quoting syl. pt. 2, *Thomas v. Bd. of Educ. of McDowell Cty.*, 167 W. Va. 911, 280 S.E.2d 816 (1981))); *see also W. Va. Bd. of Med. v. Spillers*, 187 W. Va. 257, 259–60, 418 S.E.2d 571, 573–74 (1992) ("[J]urisdiction of writs of mandamus and prohibition for actions against [a state agency or official] is appropriate only in the [Kanawha circuit court] in accordance with . . . *W.Va.Code,* 14–2–2 [1976]."); W. Va. Code § 14-2-2 (1976) ("The following proceedings shall be brought and prosecuted only in the [Kanawha circuit court]: (1) Any suit in which the Governor, any other state officer, or a state agency is made a party defendant, except as garnishee or suggestee." (in part)).

11

Both our case law and the Code establish that the present writ of mandamus was properly filed in the Kanawha circuit court. Upon our *de novo* review, we determine that the Kanawha circuit court erred in concluding that it was not the appropriate court to decide this matter, and we now reverse the Kanawha circuit court on this issue. The Kanawha circuit court is the *only* court with jurisdiction in which venue is proper in the present mandamus action against the Warden.

**B. The Warden's deductions are permissible under W. Va. Code § 25-1-3c(c)(1).**

Currently, the Warden is deducting 40% of the money Mr. Painter receives from his family and friends to pay his court-ordered restitution obligation.[7] The Kanawha circuit court concluded that W. Va. Code § 25-1-3c and Policy Directive 111.06 do not limit a circuit court's authority to order that restitution be collected from an inmate's account, regardless of the source of those funds. Further, the Kanawha circuit court determined that "[u]nder West Virginia Code, § 25-1-3c, it is well within a [circuit court]'s authority to find that the term 'earnings' includes more than income earned at a prison job."

_____

[7] As of the time Mr. Painter filed his writ of mandamus in the Kanawha circuit court, he was employed as a janitor at Mount Olive and received $51.00 per month for those services. He claimed that his family and friends sent him "a few dollars, irregularly." In the grievance he filed on March 13, 2014, he asserted that he received a $25.00 money order from home and that the Warden wrongfully deducted 40% ($10.00) from that gift to pay Mr. Painter's restitution obligation.

Mr. Painter argues that the circuit court's determinations are flawed. He asserts that pursuant to W. Va. Code § 25-1-3c and Policy Directive 111.06, the money he receives from family and friends does not constitute "earnings" and thus should be exempt from the restitution deduction.

In response to Mr. Painter's argument, the Warden maintains that

West Virginia Code, § 25-1-3c does not give the [DOC] exclusive authority to interpret what constitutes an inmate's "earnings" and "income" for purposes of restitution. West Virginia Code, § 25-1-3c does not exclude the sentencing court from interpreting and determining what constitutes an inmate's "earnings" and "income" for purposes of restitution. Where there is conflict between the [DOC] and the sentencing court's Order as to "earnings" and "income," West Virginia Code, § 25-1-3c does not intend to have the [DOC] usurp the sentencing court's general constitutional powers to interpret statutes and to adjudicate individual cases.

Mr. Painter responds to the Warden's position by correctly noting that the Berkeley circuit court "did not enter an order interpreting the words 'earnings' and 'income.'" As Mr. Painter recognizes, the sentencing order makes no mention of "earnings" or "income," and it does not include any interpretation as to the meaning of these words. In fact, the Berkeley circuit court's sentencing order does not mention W. Va. Code § 25-1-3c nor the language contained therein whatsoever. Regardless, as established above, the interpretation of the Berkeley circuit court's sentencing order is

13

not the subject of Mr. Painter's petition for writ of mandamus; Mr. Painter's petition seeks the Warden's compliance with W. Va. Code § 25-1-3c and Policy Directive 111.06 when deducting money from his inmate account for payment of his restitution obligation.

Whether the Warden may make the deductions complained of in this case depends on whether Policy Directive 111.06 provides a definition of the word "earnings" that is consistent with the language and legislative intent of W. Va. Code § 25-1-3c(c)(1). In analyzing whether a legislative rule is consistent with its enabling statute, we first examine whether the statute is ambiguous or silent with regard to the language at issue. Syl. pt. 4, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995). If the statute is ambiguous or silent with respect to the specific issue, the Court must determine "whether the legislative rules . . . extinguish the ambiguity or fill the gap" in the statute. *W. Va. Health Care Cost Review Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 333, 472 S.E.2d 411, 418 (1996). "[T]he rule can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious." Syl. pt. 5, in part, *id.*

In this case, the language at issue is the word "earnings" in W. Va. Code § 25-1-3c(c)(1). This word is not defined in this section, nor is it defined in the article containing the section. Although Mr. Painter claims that "earnings" has a clear and

14

precise meaning that would exclude gifts, he has provided no citations to sources to support this proposition.

We conclude that whether the word "earnings" includes gifts depends on the context in which "earnings" is used. While "earnings" in a narrow context may refer to "something (as wages) earned," it could in another context refer more broadly to "the balance of revenue[8] after deductions of costs and expenses." *Merriam-Webster's Collegiate Dictionary* 391 (11th ed. 2005) (defining "earnings") (footnote added); *see also* W. Va. Code § 48-1-223 (2001) (defining "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program"); *Cummings v. IRS*, 73 F.2d 477, 480 (1st Cir. 1934) (determining that the word "earnings," as used in a particular federal statute, include gifts to a corporation). Indeed, the definition of "earnings" in Policy Directive 111.06(III) is very broad, including sums received in the settlement of a lawful process, from inheritance, through a bequest, or as a gift.

In the context of the statute, Mr. Painter argues that a more narrow meaning of the word should apply, whereas the Warden argues that "earnings" should be applied

---

[8] "Revenue" can include "the total income produced by a given source." *Merriam-Webster's Collegiate Dictionary* 1066 (11th ed. 2005) (defining "revenue").

15

broadly to include gifts. In deciding the meaning of "earnings" as used in W. Va. Code § 25-1-3c(c)(1), we observe that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). Here, the parties each present two equally legitimate readings of "earnings," but only one could have been intended by the Legislature. Pursuant to *Hereford*, we determine that "earnings" as used in W. Va. Code § 25-1-3c is ambiguous.

Having established that W. Va. Code § 25-1-3c(c)(1) is ambiguous with regard to the word "earnings," we must decide whether Policy Directive 111.06 "extinguish[es] the ambiguity or fill[s] the gap" in the statute. *Boone Mem'l Hosp.*, 196 W. Va. at 333, 472 S.E.2d at 418. Here, it clearly does; Policy Directive 111.06(III) contains an explicit definition of "earnings." To the extent this definition references types of income to an inmate, such as gifts, which may constitute "earnings," the definition does not conflict with the language of W. Va. Code § 25-1-3c(c)(1).

That said, we believe that language within Policy Directive 111.06(III) which purports to nullify the intent of W. Va. Code § 25-1-3c(c)(1) by excluding certain types of "earnings" received by an inmate from being subject to deduction based upon the

16

source of such "earnings" is inconsistent with the statute. While the rule allows for deductions from "gifts," which is consistent with the language of W. Va. Code § 25-1-3c(c)(1), the rule separately provides that "funds provided the inmate by family or friends" are not subject to deductions. A comparable restriction is not placed on deductions made from the accounts of inmates of regional jail facilities despite the parallels between the relevant statutory provisions.[9] Neither party has provided this Court with an explanation for why Policy Directive 111.06 would exclude monetary gifts from

---

[9] W. Va. Code § 31-20-31(e)(1) (2007), which deals with deductions from the account of an inmate at a regional jail facility, provides:

> The administrator shall deduct from the earnings of each qualified inmate legitimate court-ordered financial obligations including, but not limited to, child support payments, liens and any other court-ordered financial obligation. The Executive Director shall develop a policy that outlines the formula for the distribution of the qualified inmate's income and the formula shall include a percentage deduction, not to exceed forty percent in the aggregate, for any court ordered victim restitution, court fees and child support obligations owed under a support order, including an administrative fee not to exceed one dollar . . . .

Like W. Va. Code § 25-1-3c(c)(1), W. Va. Code § 31-20-31(e)(1) permits deductions to be made from an inmate's account to pay court-ordered obligations. The legislative rules promulgated pursuant to W. Va. Code § 31-20-31 provide that deductions must be made "from the inmate's income." W. Va. Code R. § 94-8-5 (2008). Pursuant to W. Va. Code § 48-1-230(4) (2008),"[a]ny amount of money which is held by the Regional Jail Authority for an inmate in an inmate's concession account" is income. W. Va. Code § 48-1-230(4) (2008). Thus, any money in a regional jail facility inmate's account is subject to deduction for the satisfaction of court-ordered obligations.

family and friends from being subject to deductions, nor is there an explanation in either the enabling statute or the rule itself.

As we recognized above, a legislative rule "can be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious." Syl. pt. 4, in part, *Appalachian Power Co.*, 195 W. Va. 573, 466 S.E.2d 424. "As a general rule, an action is deemed to be arbitrary if it is taken without a sound basis in reason and generally without regard to the facts." *Nestle Waters North Am., Inc. v. City of New York*, 990 N.Y.S.2d 512, 514 (N.Y. App. Div. 2014); *see also Blank v. Dep't of Corr.*, 564 N.W.2d 130, 140 (Mich. Ct. App. 1997) ("A rule is arbitrary if it was fixed or arrived at through an exercise of will or by caprice, without giving consideration to principles, circumstances, or significance."); *Deese v. S.C. State Bd. of Dentistry*, 332 S.E.2d 539, 541 (S.C. Ct. App. 1985) ("A decision is arbitrary if it is without a rational basis, is based alone on one's will and not upon any course of reasoning and exercise of judgment, is made at pleasure, without adequate determining principles, or is governed by no fixed rules or standards."). Likewise, "[a] rule is capricious if it is apt to change suddenly or is freakish or whimsical." *Blank*, 564 N.W.2d at 140; *see also Dravo Basic Materials Co. v. State, Dep't of Transp.*, 602 So. 2d 632, 634 (Fla. Dist. Ct. App. 1992) (stating that a rule is capricious if it is "without thought or reason"). We have also held that rules "must faithfully reflect the intention of the legislature." Syl. pt. 5, in part,

18

*Appalachian Power Co.*, 195 W. Va. 573, 466 S.E.2d 424 (quoting syl. pt. 2, in part, *Chico Dairy Co. v. Human Rights Comm'n*, 181 W. Va. 238, 382 S.E.2d 757 (1989)).

In determining legislative intent, we need look no further than the express declarations of intent in the Code. We observe that W. Va. Code § 25-1-3c(a) sets forth the Legislature's desire that "sentenced inmate[s] should be encouraged to meet [their] legitimate court-ordered financial obligations" because "[t]here is an urgent need for vigorous enforcement of child support, restitution and other court ordered obligations." This strong language evinces the Legislature's intent that inmates pay their court-ordered obligations. The Victim Protection Act of 1984, which authorizes awards of restitution, is also illuminating on the issue of intent. The Legislature has found that "all too often the victim of a serious crime is forced to suffer physical, psychological or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system not totally responsive to the needs of such victims." *Id.* § 61-11A-1(a). From this and other findings, "[t]he Legislature declares that the purpose[] of [The Victim Protection Act is] . . . to ensure that the State and local governments do all that is possible within the limits of available resources to assist victims . . . of crime without infringing on the constitutional rights of the defendant." W. Va. Code § 61-11A-1(b) (1984). Finally, with regard to child support, W. Va. Code § 48-11-101(a) (2001) provides that "[i]t is the intent of the Legislature that to the extent practicable, the laws of this state

19

should encourage and require a child's parents to meet the obligation of providing that child with adequate food, shelter, clothing, education, and health and child care."

It is apparent to us that the Legislature intends that inmates satisfy their court-ordered obligations. In light of the Legislature's intent, we can see no rational basis for the exclusion of money given by family and friends from the definition of "earnings" in Policy Directive 111.06. Further, there is no basis for distinguishing this type of gift from all other gifts subject to deductions. There is no express or implicit justification for this exclusion in W. Va. Code § 25-1-3c. We can only conclude that the exclusion of funds given to an inmate from family and friends from the definition of "earnings" in Policy Directive 111.06(III) is arbitrary and capricious. Therefore, the exclusion from "earnings" of funds provided to an inmate by family and friends in Policy Directive 111.06(III) can be ignored.

In sum, we hold that for the purpose of ensuring that an inmate satisfies his or her court-ordered financial obligations, W. Va. Code § 25-1-3c(c)(1) (2005) permits the Division of Corrections to make deductions from funds provided to the inmate by family or friends. The exclusion of "funds provided inmates by family or friends" from the definition of "earnings" in Policy Directive 111.06(III) (2006), a legislative rule promulgated by the Division of Corrections, is arbitrary and capricious and therefore may be ignored. Because the Warden's deductions from Mr. Painter's inmate account are

20

consistent with this holding, the circuit court's disposition of this case shall not be disturbed on appeal.

We wish to make clear that while the funds Mr. Painter receives from his family and friends are subject to deduction for payment of his restitution obligation, the Warden may only deduct 40% of those funds for the purpose of satisfying court-ordered obligations. W. Va. Code § 25-1-3c(c)(1); Policy Directive 111.06(V)(B)(3). In other words, Mr. Painter may keep 60% of the monetary gifts he receives from his family and friends for himself subject to any other deductions permitted by separate provisions of the Code. *See, e.g.*, W. Va. Code § 25-1-3a (2009) (permitting the State to assess inmates for the cost of their incarceration); W. Va. Code § 25-1-8 (1998) (permitting the State to assess inmates for health care and treatment services rendered).

## IV. CONCLUSION

For the reasons set forth above, we conclude that the Warden's deductions from Mr. Painter's inmate account are consistent with the law. Accordingly, the Kanawha circuit court was correct to deny Mr. Painter's requested writ of mandamus. We affirm the circuit court's October 29, 2014, order on this issue. However, the Kanawha circuit court was incorrect in determining that it was not the proper venue for the action and that it lacked jurisdiction. We therefore reverse the October 29, 2014, on this issue.

21

Affirmed in part and reversed in part.